Ray MARSHALL, Secretary of the United States Department of Labor, Plaintiff,

v.

Gerald DAVIS, Lawrence Martin, Calvin P. Owen, T. Gregory Longpre, W. Stanley Whitaker, Wesley G. Jeltema, Robert Williaume, Richard Miller, John S. Boyce, Gene Merglewski, Kenneth Montagna, and Marwinn Bielas, Defendants.

No. G80–169.

United States District Court, W. D. Michigan, S. D.

June 30, 1981.

---

**552**

Edward Scallet, U. S. Dept. of Labor, Washington, D. C., for plaintiff.

George E. Dombrowski, Kalamazoo, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq* (ERISA). The Secretary of Labor has alleged that Defendants, trustees of the Michigan Carpenters' Council Vacation and Holiday Fund (the Plan), in cooperation with the Union that established the Plan have violated the Act by deducting union dues from monies in the Plan on a monthly basis while disbursing funds to the Plan's participants on an annual basis. As the sole stated purpose of the Plan is to provide payments for vacations and holidays and as participants in the Plan are unable to withdraw these funds until the annual disbursement or to assign them for the benefit of creditors until the funds are released, Plaintiff contends that these arrangements to permit the Union to gain dues in this manner are in contravention of specific provisions of ERISA as well as the interests of the Plan participants and beneficiaries in favor of those of the Union.

Money that is set aside for union dues is not invested while assets disbursed on an annual basis are invested in short term securities which are timed to mature annually when the funds are to be returned to the participants. If the Plan makes profitable investments, dividends are declared (less costs of administering the Plan) which are included in the annual payments to participants. If costs exceed the return on investment, they are assessed to the participants. Plaintiff charges that Defendants have violated their fiduciary duty to the Plan's participants since they have not operated the Plan *solely* and *exclusively* for the benefit of participants as required by ERISA Section 403(c)(1), 29 U.S.C. § 1103(c)(1). The Secretary cites, as an example, the fact that with approximately 5,000 members of the Vacation and Holiday Fund, the Union has obtained about $3.5 million in working capital from 1975–79 while the Plan earned 1½ percent in 1979, earned no dividend in 1978, and required an assessment in 1977. Plaintiff estimates the loss to the beneficiaries of the Plan at approximately $100,000 and seeks restitution as well as enjoinment of these activities. The Secretary has not provided the Court with evidence of damages at this time however.

Both Plaintiff and Defendants agree that the issues are at law and both parties have moved for summary judgment with the Defendant-trustees seeking to bring in additional carpenters' unions throughout Michigan as additional party defendants. As there is no genuine issue of material fact, utilization of summary judgment is proper. Summary judgment is an appropriate mechanism for disposing of legal questions of statutory and regulatory construction. *Standard Oil Company v. Department of Energy*, 596 F.2d 1029 (Em.App.1978).

The parties agree that the Plan is subject to ERISA because it is a "plan, fund, or program established or maintained by an employee (and) employee organization for the purpose of providing for its participants and beneficiaries ... vacation benefits ... within the meaning of ERISA" § 3(1), 29 U.S.C. § 1002(1). Similarly, the parties agree that Defendant-trustees are "fiduciaries" within the meaning of ERISA as defined by § 3(21) of 29 U.S.C. § 1002(21).

Rather, the basic point of contention is the characterization of a Department of Labor Interpretive Bulletin (IB 78–1) which expressed the view that multiple employer vacation plans may be used to collect and transmit Union dues if:

(1) the plan documents expressly state that a participant or beneficiary may direct payment of benefits to a third party;

(2) the participants or beneficiary acknowledges this direction in writing; and

(3) the payment to the third party occurs ·only when or after the money would otherwise be payable to the participant or beneficiary.

Defendants have complied with all requirements except Item # 3 which forms the basis of the dispute before the Court. Defendant-trustees argue that IB 78–1 is not an interpretive rule at all, but is instead a substantive rule, quasi-legislative in nature, which was issued without notice and comment procedures required by ERISA Section 408(a) and Section 553 of the Administrative Procedure Act. As such, Defendants contend that "Interpretive Bulletin" is null and void because the Secretary acted beyond his authority, because IB 78–1 was issued without providing interested parties the opportunity to advise and counsel with the Secretary regarding the practicalities involved, and because of the substantive effect of requiring the payment to the employees or beneficiaries on a basis as frequent as a third party is entitled to payment.

Defendants urge that because they are in compliance with previously imposed requirements issued by the Department of Labor, viz, Prohibited Transaction Exemptions 76–1 Part c (41 FR 1270, March 26, 1976) and 77–10 (42 FR 33918, July 1, 1977), they have sufficiently complied with applicable law and cannot be held liable for the Secretary's unforeseeable departure from these requirements. The Secretary disputes Defendants' analysis of Interpretive Bulletin IB 78–1 and the significance of Defendants' compliance with 76–1 and 77–

10 respectively as they apply to one facet of the dues assessment program—the sharing of the administrative services between the Plan and the Union. Plaintiff points out that renting space or sharing a clerical staff, the topics covered by these exemptions, do not provide support for a program which sends three quarters of a million dollars a year of Plan assets to the Union. The Secretary further alleges that the present suit is not based upon violation of Interpretive Bulletin IB 78–1, but is rather based upon violation of ERISA §§ 403, 404 and 406, 29 U.S.C. §§ 1103, 1104 and 1106 in that the Plan is not operated solely for the benefit of the participants and beneficiaries.

Examining the record, I find that the Secretary of Labor has properly founded his suit on the statutes in question and that ERISA does not permit the type of transactions at issue. ERISA is a broad remedial statute which was intended to provide special protections for the interests of participants and beneficiaries of employee pension and welfare benefit plans, to develop uniform standards for administering these plans, and for preserving the integrity of plan assets. *Eaves v. Penn*, 587 F.2d 453 (CA 10 1979); *Marshall v. Snyder*, 572 F.2d 894 (CA 2 1978).

The legislative history of ERISA makes it clear that, as the House report on HR2 indicates, 'The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants.' *Marshall v. Snyder, supra*, at 901.

It is my opinion that there is a *per se* adverse transaction involved when the Defendant-trustees attempt to "balance the interests" involved by facilitating a Union dues assessment program and by managing in a financially responsible way the Vacation and Holiday Fund for the benefit of participants. The Third Circuit Court of

Appeals addressed the dangers inherent in trying to balance divergent interests in administering two union funds when there was an obvious overlap in the identity of the participants, the union locals, and the employers who were parties to the plans when both had the same trustees.

*Cutaiar v. Marshall*, 590 F.2d 523 (CA 3 1979) stated:

We note the national public interest in safeguarding anticipated employee benefits by establishing *minimum* standards to protect employee benefit plans. The substantial growth of plans affecting the security of millions of employees and their dependents, as well as the limited resources of the Department of Labor in the enforcement of ERISA, leads us to believe that Congress intended to create an easily applied per se prohibition of the type of transaction in question . . . We do not regard this as a harsh rule.

I find that the Plan must be represented by trustees who are free to exert the maximum economic power manifested by their fund whenever they are negotiating a commercial transaction and that Section 406(b)(2) speaks of the interests of the Plan or beneficiaries not "some" or "many" or "most" of the participants. While the trustees may have operated with the best of intentions to accommodate all the parties involved, provision for the monthly distribution of Plan assets to the Union dilutes the economic viability of the Holiday and Vacation Fund. Until the funds are available to the participants, the trustees may not disburse Plan assets to a party in interest.

The statute itself clearly expresses this prohibition.

Section 403(c)(1)—Except as provided . . . the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

Section 404(a), 29 U.S.C. § 1104(a)—. . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and

(A) for the exclusive purpose of:

(i) providing benefits to participants and beneficiaries; and

(ii) defraying reasonable expenses of administering the plan . . .

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a life character and

Section 406, 29 U.S.C. § 1106 provides in pertinent part:

(a)(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan . . .

ERISA § 3(14), 29 U.S.C. § 1002(14) defines "party in interest" to include "an employee organization any of whose members are covered by such plan".

Using the Plan as a vehicle for the collection of Union dues violates the Act and causes economic loss which is born equally by those who have not acquiesced in the monthly distributions as well as by those who have consented to the transactions. I find that the Secretary's contention that the law prohibits multiple employer vacation plans from collecting and transmitting Union dues before the money would otherwise be payable to a participant or beneficiary fully comports with the intent of Congress to provide security for welfare benefit plans in creating a broad remedial statute which should be liberally construed. To hold otherwise would not only subvert Congressional intent but would jeopardize the viability of the Plan.

Since I hold that the violation is based upon the statutes in question and not upon the Secretary's Interpretive Bulletin, it follows that notice and comment procedures were not necessary to safeguard Defendants' due process rights in this instance.

Trustees may not transfer to, or use by, or for the benefit of, a party in interest, any assets of the Plan. Section 406, 29 U.S.C. § 1106(a)(1)(D). Rather than creating any new liability, the Secretary's interpretation merely reiterates existing law as a practical guide for those affected by it. Certainly, the Defendants do not argue that the check off system was not to assist the Union (a party in interest) in the collection of Union dues, nor do they argue that there was not an economic loss to the Plan when these funds were not available for investment. I find that the transactions were those envisioned by Congress when enacting ERISA and enjoin Defendants from further disbursing Plan assets until these monies are available to participants.

Defendants are concerned with what they label the "retroactive" effect of the Secretary's allegations since Plaintiff has alleged damages from 1975. However, in this action, Defendant-trustees were well aware that they had the obligation to act with care, skill, and prudence in discharging their fiduciary responsibilities. They were likewise well aware that assets of a plan shall never accrue to the benefit of any employer or party in interest, and shall be held for the exclusive purpose of providing benefits to participants in the Plan. Additionally, Defendants knew that not all participants in the Plan had authorized check-offs for dues assessments. Furthermore, the Defendants must have been aware of the negligible return on investment of assets retained in the fund and of the significance of the segregation of monies to be distributed to the Union on the over-all performance of the Vacation and Holiday Fund. Evidence of Defendants' awareness of the impact of the law upon the transactions in question is shown by the contract for indemnification of the trustees by the Unions involved if the matter should result in litigation.

From analysis of the statutes and the transactions alone, without considering the good faith of the trustees, I find that Defendants have violated the statute and enjoin them from continuing this practice. The Court will conduct a hearing at a later date to consider the question of damages and restitution to the Vacation and Holiday Fund.