**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:     Justices:
Clifford W. Taylor     Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED MARCH 28, 2007

GREGORY HAYNES,

      Plaintiff-Appellant,

v            No. 129206

MICHAEL J. NESHEWAT, ROBERT J.
MURRAY, and BRIAN PELTZ,

      Defendants,

and

OAKWOOD HEALTHCARE, INC. and
OAKWOOD HOSPITAL-SEAWAY
CENTER,

      Defendants-Appellees.

BEFORE THE ENTIRE BENCH

KELLY, J.

We granted leave to appeal to determine whether plaintiff has stated a cause of action under MCL 37.2302, the public accommodations provision of the Civil Rights Act (CRA). This case arose when plaintiff, Dr. Gregory Haynes, an African-American physician with staff privileges at Oakwood Hospital-Seaway

Center, alleged that defendants treated him differently than similarly situated white physicians on the basis of his race. Plaintiff claims that a result of this different treatment was that he was deprived of the ability and opportunity to fully utilize the medical facilities in violation of the CRA.

Defendants moved for summary disposition of the CRA claims, arguing that plaintiff's allegations did not come within the scope of the act. The trial court rejected defendants' arguments and denied the motion. A divided Court of Appeals reversed and decided that MCL 37.2302(a) addresses discrimination with respect to services made available only to the public. We disagree. We find that MCL 37.2302 prohibits unlawful discrimination against any individual, not just members of the public. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings.

FACTS AND PROCEDURAL HISTORY

Plaintiff is a physician licensed in the state of Michigan with specialties in internal medicine and gastroenterology. In order to care for patients requiring hospitalization, plaintiff has maintained, and still maintains, medical staff membership and clinical privileges at Oakwood Hospital-Seaway Center. Plaintiff is the only African-American staff physician who conducts the majority of his hospital practice at Oakwood. Defendant Oakwood Healthcare, Inc. (Oakwood),[1]

---

[1] Unless it is necessary to distinguish between the two, both Oakwood-Seaway Center and Oakwood Healthcare, Inc., will be referenced as Oakwood.

2

is a Michigan nonprofit corporation that does business as Oakwood Hospital-Seaway Center. Defendant Dr. Michael J. Neshewat was the chief of staff at Oakwood.

On October 31, 2001, plaintiff filed his four-count complaint against defendants.[2] In the complaint, he asserted claims for violation of the CRA, tortious interference with business relationships and expectancies, negligence, and conspiracy under the CRA. Plaintiff alleges that defendants have treated him differently than similarly situated physicians on the basis of his race. He claims that he has been subjected to excessive charges of unprofessional behavior and administrative hearings designed to discourage him from using the facilities at Oakwood. He also alleges that defendants have attempted to steal his patients and have disparaged his professional competence in an effort to impair his relationships with patients and other physicians.[3] Plaintiff claims that this discriminatory treatment has deprived him of the ability and opportunity to fully and equally utilize the facilities at Oakwood.

---

[2] The complaint named as defendants Oakwood Healthcare, Inc.; Dr. Michael Neshewat; Dr. Robert Murray; and Brian Peltz. Before the filing of defendants' motion for summary disposition, Mr. Peltz and Dr. Murray were dismissed from the action by stipulation of the parties. Dr. Neshewat failed to appear or plead and a default judgment was entered against him. Defendants opposed plaintiff's motion for entry of a default judgment, thereby preserving the right to challenge the trial court's decision granting the default judgment.

[3] Plaintiff's medical practice is largely dependent on referrals by patients and other physicians. Plaintiff claims that defendant Neshewat intimidated other

(continued…)

3

Defendants moved for summary disposition, arguing, among other things, that a hospital is not a place of public accommodation with respect to its decisions concerning staff privileges. The trial court granted defendants' motion with respect to the claims of negligence and tortious interference with business relationships.[4] Summary disposition was denied on the CRA claims pursuant to MCR 2.116(C)(8). The trial court determined that the CRA's reach was broad enough to protect plaintiff's privilege to practice medicine without plaintiff suffering racial discrimination within the hospital, a place of public accommodation.

Defendants timely applied for, and were granted, interlocutory review. In a split decision, the Court of Appeals reversed. Unpublished opinion per curiam, issued June 23, 2005 (Docket No. 249848). The Court of Appeals majority held that a place of public accommodation exists only through the provision of goods, services, facilities, privileges, advantages, or accommodations to the public. Services and privileges that a facility does not provide to the public, it reasoned, do not implicate the public accommodations provision of the CRA. Therefore, the Court held that a health facility is certainly a place of public accommodation under the CRA in some respects. However, a physician's complaint concerning his or

_____

(…continued)
physicians in an attempt to cause them to stop referring patients to him. Plaintiff alleges that he has been singled out for this treatment because of his race.

[4] Plaintiff did not appeal from this ruling.

4

her private medical staff privileges at a hospital does not come within the purview of the public accommodations provisions.

Judge Griffin dissented. He would have held that the denial of a physician's full and equal enjoyment of hospital staff privileges because of racial discrimination is prohibited by the CRA. We granted plaintiff's application for leave to appeal. 474 Mich 1000 (2006).

STANDARD OF REVIEW

This case involves a question of statutory interpretation, which we review de novo. *Ostroth v Warren Regency, GP, LLC,* 474 Mich 36, 40; 709 NW2d 589 (2006). We also review de novo a trial court's decision on a motion for summary disposition. *Id.* Defendant's motion for summary disposition was made pursuant to MCR 2.116(C)(8).[5] In reviewing a ruling made under this court rule, a court tests the legal sufficiency of the plaintiff's complaint by the pleadings alone. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277; 681 NW2d 342 (2004). The motion should be granted only if no factual development could possibly justify recovery. *Beaudrie v Henderson*, 465 Mich 124, 130; 631 NW2d 308 (2001).

---

[5] MCR 2.116(C)(8) provides:

(C) Grounds. The motion may be based on one or more of these grounds, and must specify the grounds on which it is based:

* * *

(8) The opposing party has failed to state a claim on which relief can be granted.

5

ANALYSIS

A.  INTERPRETING THE STATUTE

We are called on to decide whether plaintiff stated a cause of action under the public accommodations section of the CRA.  He alleged that defendants' discriminatory behavior deprived him of the opportunity to fully and equally utilize the Oakwood facilities.  Two provisions of the public accommodations section are relevant to our inquiry:  MCL 37.2301(a) and MCL 37.2302(a). MCL 37.2301(a) defines the phrase "place of public accommodation" while MCL 37.2302(a) lists the rights persons cannot deny individuals in places of public accommodation on the basis of a protected characteristic.

To resolve the issue before us, we must interpret the CRA.  The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *Ford Motor Co v Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006).  If the statute is unambiguous, this Court will apply its language as written.  *Id.*  When a statute specifically defines a given term, that definition alone controls.  *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996).

MCL 37.2302 provides in part:

> Except where permitted by law, a person shall not:
>
> (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

6

In order to state a claim under MCL 37.2302(a), plaintiff must establish four elements: (1) discrimination based on a protected characteristic (2) by a person, (3) resulting in the denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations (4) of a place of public accommodation.

Plaintiff claims that he was discriminated against because of his race. Race is one of the specifically listed protected characteristics. Therefore, this allegation sufficiently establishes the first element. The CRA defines "person" as "an individual, agent, association, corporation, joint apprenticeship committee, joint stock company, labor organization, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, unincorporated organization, the state or a political subdivision of the state or an agency of the state, or any other legal or commercial entity." MCL 37.2103(g). Both defendant Neshewat and defendant Oakwood fit within this definition. As a result, the second element is also sufficiently established.

In order to establish the third element, plaintiff must have been denied the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations. The CRA does not define these terms. We give undefined terms their ordinary meanings. *Koontz v Ameritech Services*, *Inc,* 466 Mich 304, 312; 645 NW2d 34 (2002). A dictionary may be consulted if necessary. *Id. Webster's* defines "privilege" as "a right, immunity, or benefit enjoyed by a

7

particular person or a restricted group of persons." *Random House Webster's College Dictionary* (2001).

Plaintiff has staff privileges at Oakwood. These privileges give him the right to use the hospital facilities to treat his patients. Staff privileges are "privileges" because they are a "right" or "benefit" that is enjoyed only by a restricted group of people, in this case doctors. Thus, the full and equal enjoyment of staff privileges is protected by § 302(a). Plaintiff alleged that defendants interfered with his staff privileges and that this denied him the opportunity to fully and equally utilize the facilities. This allegation sufficiently establishes the third element of the statute.

The last remaining inquiry is whether Oakwood is a place of public accommodation.

MCL 37.2301(a) provides in part:

> As used in this article:
>
> (a) "Place of public accommodation" means a business, or an educational, refreshment, entertainment, recreation, health, or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public.

Oakwood provides a full range of health services to the public. It is a "business [or] . . . health . . . facility . . . whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." MCL 37.2301(a). Therefore, Oakwood

8

qualifies as a place of public accommodation. See *Whitman v Mercy-Memorial Hosp*, 128 Mich App 155; 339 NW2d 730 (1983). As a result, all four elements of the statute are sufficiently established and plaintiff has stated a cause of action under the CRA.

B. MCL 37.2302(a) PROTECTS INDIVIDUALS, NOT MEMBERS OF THE PUBLIC

Defendants argue, and the Court of Appeals majority agreed, that plaintiff states a claim under § 302(a) only if he alleges that he was deprived of goods, services, facilities, privileges, advantages, or accommodations that were made available to the public. According to defendants, even if there has been an interference with plaintiff's ability to practice as a physician at Oakwood, plaintiff has not stated a cause of action. They reason that the practice of medicine is not a privilege offered to the public. We reject this interpretation because it is contrary to the language of the statute.

MCL 37.2302(a) protects the rights of individuals.[6] Individuals, not members of the public, are protected from the denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

---

[6] MCL 37.2302 provides in part:

Except where permitted by law, a person shall not:

(a) Deny an *individual* the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status. [Emphasis added.]

accommodations. Nowhere within the wording of § 302(a) is it required that the goods, services, facilities, privileges, advantages, or accommodations be offered to the public. We will not read into the statute a limitation that is not there. We hold that MCL 37.2302(a) forbids unlawful discrimination against any individual in a place of public accommodation, not just against members of the public.

## C. *KASSAB*

The defendants argue that this case is controlled by our decision in *Kassab v Michigan Basic Prop Ins Ass'n*, 441 Mich 433; 491 NW2d 545 (1992). In *Kassab*, this Court decided that the CRA did not provide a remedy for discriminatory processing of insurance claims. *Id.* at 442. The Court concluded that, even if the insurance company was a "'[p]lace of public accommodation,'" the CRA did not extend beyond "'services . . . made available to the public'" and so did not provide a cause of action to Mr. Kassab. *Id*. at 440-441. It held that, as long as the company provided access to services, the CRA did not prevent it from discriminating in providing full and equal enjoyment of those services. *Id.* at 441. We conclude that the Court in *Kassab* erred by reading nonexistent limitations into the statute. To the extent that *Kassab* can be read to limit the CRA inconsistently with our holding today, it is overruled.

We are mindful of the doctrine of stare decisis and do not take lightly our decision to overrule *Kassab*. In *Robinson v Detroit*,[7] we discussed stare decisis

---

[7] 462 Mich 439; 613 NW2d 307 (2000).

10

and the factors to be considered when deciding whether to overrule a prior decision. When evaluating the factors, the first question we ask is whether the earlier decision was wrongly decided. *Id.* at 464. As we discussed previously, *Kassab* was wrongly decided. The Court erred by reading a nonexistent limitation into the statute.

Finding that a prior decision was wrongly decided is not the end of our inquiry. We must also weigh the effects of overruling the decision. *Id.* at 466. This consideration involves a review of whether the decision "defies 'practical workability,' whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision." *Id.* at 464.

We find that there are no factors that counsel against overruling *Kassab*. *Kassab* held that the CRA does not provide a cause of action for discriminatory processing of insurance claims. The fact that some parties may rely on a decision to protect them from civil liability for discriminatory behavior is not a reason to uphold an erroneous decision. This is especially true when the prior decision involves the interpretation of the CRA. The CRA implements the equal protection and antidiscrimination guarantees of the Michigan Constitution. It would be inconsistent with these constitutional guarantees to uphold an erroneous interpretation of the CRA.

CONCLUSION

The public accommodations provision of the CRA, MCL 37.2302, does not limit its prohibition against discrimination to members of the public. Rather, § 302(a) prohibits unlawful discrimination against any individual's full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

Plaintiff is a physician with staff and clinical privileges at Oakwood. By alleging that defendants' discriminatory behavior deprived him of the opportunity to fully utilize the Oakwood medical facilities, plaintiff stated a cause of action under the CRA. The judgment of the Court of Appeals is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

> Marilyn Kelly
> Clifford W. Taylor
> Michael F. Cavanagh
> Elizabeth A. Weaver
> Maura D. Corrigan
> Robert P. Young, Jr.
> Stephen J. Markman

S T A T E   O F   M I C H I G A N

SUPREME COURT

GREGORY HAYNES,

       Plaintiff-Appellant,

v

No. 129206

MICHAEL J. NESHEWAT, ROBERT J.
MURRAY, and BRIAN PELTZ,

       Defendants,

and

OAKWOOD HEALTHCARE, INC. and
OAKWOOD HOSPITAL-SEAWAY
CENTER,

       Defendants-Appellees.

_____

KELLY, J. (*concurring*).    This case requires us to interpret the public accommodations provision of the Civil Rights Act (CRA), MCL 37.2302.   A unanimous Court agrees that this provision prohibits unlawful discrimination against any individual, and not just members of the public.   Having authored the opinion, obviously I agree with it.   But I write separately because I believe that it is important to set forth additional reasons for the decision to which not all my colleagues adhere.

To start, I find frequent ambiguity in statutory language.   I do not subscribe to the belief that "only a few [statutory] provisions are truly ambiguous."   *Mayor of Lansing v Michigan Pub Service Comm*, 470 Mich 154, 166; 680 NW2d 840

(2004). For various reasons, not the least of which is the imprecise character of language, it is often impossible to discern legislative intent solely from the language written into statutes. As Justice Frankfurter eloquently stated:

> Unlike mathematical symbols, the phrasing of a document, especially a complicated enactment, seldom attains more than approximate precision. If individual words are inexact symbols, with shifting variables, their configuration can hardly achieve invariant meaning or assured definiteness. Apart from the ambiguity inherent in its symbols, a statute suffers from dubieties. It is not an equation or a formula representing a clearly marked process, nor is it an expression of an individual thought to which is imparted the definiteness a single authorship can give. A statute is an instrument of government partaking of its practical purposes but also of its infirmities and limitations, of its awkward and groping efforts. [Frankfurter, *Some reflections on the reading of statutes*, 47 Colum L R 527, 528 (1947).]

Accordingly, rather than restraining myself to the text and "mak[ing] a fortress out of the dictionary,"[1] I weigh on the balance any material that illuminates legislative intent. In this case, I have found numerous persuasive factors, not discussed in the majority opinion, that indicate that this Court has reached the correct interpretation of the statute.[2]

---

[1] *Cabell v Markham,* 148 F2d 737, 739 (CA 2, 1945) (opinion by Hand, J.)

[2] Justice Markman writes a concurring opinion criticizing my approach to statutory analysis, suggesting it lacks discipline. The aids to statutory construction I use in my concurring opinion are among many that have been applied by the Michigan Supreme Court since long before either Justice Markman or I was born. Almost every justice who has ever sat in this Court would be shocked to hear the statutory analysis I use depreciated as "language-avoidance 'interpretative' techniques." I agree with Justice Markman that aids to statutory analysis should

(continued…)

## A. REMEDIAL STATUTES

The canon of statutory construction that remedial statutes are to be liberally construed is deeply imbedded in American jurisprudence. Indeed, all 50 states[3] and courts in each federal circuit[4] have endorsed it. Even the United States

_____

(…continued)
not be misused and, I might add, that includes the "textualist" approach to which he so avidly subscribes.

[3] See, e.g., Alabama: *Austin v Alabama Check Cashers Ass'n*, 936 So 2d 1014, 1026 (Ala, 2005). Alaska: *DH Blattner & Sons v NM Rothschild & Sons, Ltd*, 55 P3d 37, 47 (Alas, 2002). Arizona: *Special Fund Div v Industrial Comm*, 191 Ariz 149, 152; 953 P2d 541 (1998). Arkansas: *Chicago Mill & Lumber Co v Smith*, 228 Ark 876; 310 SW2d 803 (1958). California: *Betancourt v Storke Housing Investors*, 31 Cal 4th 1157; 82 P3d 286 (2003). Colorado: *Christy v Ibarra*, 826 P2d 361 (Colo App, 1991). Connecticut: *Pereira v State*, 228 Conn 535, 542; 637 A2d 392 (1994). Delaware: *Vance v Irwin*, 619 A2d 1163, 1164-1165 (Del, 1993). Florida: *Joshua v City of Gainesville*, 768 So 2d 432, 435 (Fla, 2000). Georgia: *Mitchell v Wilkerson*, 258 Ga 608, 610; 372 SE2d 432 (1988). Hawaii: *Kalima v State*, 111 Hawaii 84, 99; 137 P3d 990 (2006). Idaho: *Page v McCain Foods, Inc,* 141 Idaho 342, 346; 109 P3d 1084 (2005). Illinois: *Grant Contracting Co v Murphy*, 387 Ill 137, 143; 56 NE2d 313 (1944). Indiana: *United Nat'l Ins Co v DePrizio*, 705 NE2d 455, 459-460 (Ind, 1999). Iowa: *TLC Home Health Care, LLC v Iowa Dep't of Human Services,* 638 NW2d 708, 714 (Iowa, 2002). Kansas: *O'Donoghue v Farm Bureau Mut Ins Co, Inc,* 275 Kan 430, 437; 66 P3d 822 (2003). Kentucky: *City of Louisville v Slack*, 39 SW3d 809, 815 (Ky, 2001). Louisiana: *Jim Walter Homes, Inc v Guilbeau*, 934 So 2d 239, 245 (La App, 2006). Maine: *Bennett v Prawer*, 2001 Me 172; 786 A2d 605 (2001). Maryland: *Caffrey v Dep't of Liquor Control*, 370 Md 272, 306; 805 A2d 268 (2002). Massachusetts: *Gasior v Massachusetts Gen Hosp*, 446 Mass 645, 654, 846 NE2d 1133 (2006). Michigan: *Eide v Kelsey-Hayes Co*, 431 Mich 26, 36; 427 NW2d 488 (1988). Minnesota: *Foley v Whelan*, 219 Minn 209, 213; 17 NW2d 367 (1945). Mississippi: *Cahoon v Scarborough*, 159 Miss 5, 10; 131 So 431 (1930). Missouri: *Scheble v Missouri Clean Water Comm,* 734 SW2d 541, 556 (Mo App, 1987). Montana: *In re CH*, 318 Mont 208, 214; 79 P3d 822 (2003). Nebraska: *State v Kastle*, 120 Neb 758, 772; 235 NW 458 (1931). Nevada: *Virden v Smith*, 46 Nev 208, 211; 210 P 129 (1922). New Hampshire: *Newell v Moreau*, 94 NH 439, 442; 55 A2d 476 (1947). New Jersey: *Feldman v Hunterdon*

(continued…)

_____

(…continued)

*Radiological Assoc*, 187 NJ 228, 239; 901 A2d 322 (2006).  New Mexico: *Mem Med Ctr v Tatsch Constr, Inc*, 129 NM 677, 685; 12 P3d 431 (2000).  New York: *Rizzo v New York State Div of Housing & Community Renewal*, 6 NY3d 104, 114; 843 NE2d 739 (2005).  North Carolina: *Nationwide Mut Ins Co v Lankford*, 118 NC App 368, 376; 455 SE2d 484 (1995).  North Dakota: *Schaefer v Job Service North Dakota,* 463 NW2d 665, 666 (ND, 1990).  Ohio: *Clark v Scarpelli*, 91 Ohio St 3d 271, 275; 744 NE2d 719 (2001).  Oklahoma: *Associated Indemnity Corp v Cannon*, 1975 Okla 87; 536 P2d 920 (1975).  Oregon: *Rash v Employment Div*, 85 Or App 570, 573; 737 P2d 966 (Or App, 1987).  Pennsylvania: *School Dist v Montgomery*, 227 Pa 370; 76 A 75 (1910).  Rhode Island: *Weybosset Hill Investments, LLC v Rossi,* 857 A2d 231, 239 (RI, 2004).  South Carolina: *Elliott v South Carolina Dep't of Transportation,* 362 SC 234, 237; 607 SE 2d 90 (SC App, 2004).  South Dakota: *Chiolis v Lage Dev Co*, 512 NW2d 158, 163 (SD, 1994). Tennessee: *Kannon v Pillow*, 26 Tenn 281 (1846).  Texas: *Mecca Fire Ins Co v Stricker*, 136 SW 599, 601 (Tex Civ App, 1911).  Utah: *Tolle v Fenley*, 2006 Utah App 78; 132 P3d 63 (2006).  Vermont: *Celeste Washington Supreme Court v Pierce*, 2005 Vt 125 (2005).  Virginia: *Brooks v Hannan*, 53 Va Cir 465, 466 (2000).  Washington: *State ex rel Winston v Seattle Gas & Electric Co*, 28 Wash 488, 493; 68 P 946 (1902).  West Virginia: *Plummer v Workers' Compensation Div*, 209 W Va 710, 713; 551 SE2d 46 (2001).  Wisconsin: *Dep't of Transportation v Transportation Comm,* 111 Wis 2d 80, 92; 330 NW2d 159 (1983).  Wyoming: *Wyoming Ins Guaranty Ass'n v Woods,* 888 P2d 192, 195 (Wy, 1994).

[4] See, e.g., First Circuit: *Carew v Boston Elastic Fabric Co*, 5 F Cas 56 (D Mass, 1871); *United States, to Use and Benefit of Sargent Co  v Century Indemnity Co*, 9 F Supp 809 (D Me, 1935); *Stevens v Bangor & Aroostook R Co*, 97 F3d 595 (CA 1, 1996).  Second Circuit: *Imlay v Norwich & W R Co*, 13 F Cas 1 (D Conn, 1858); *Bossert Electric Constr Co v Pratt Chuck Co*, 179 F 385 (CA 2, 1910); *Pittston Stevedoring Corp v Dellaventura,* 544 F2d 35 (CA 2, 1976); *Rogers v Consolidated Rail Corp,* 948 F2d 858 (CA 2, 1991); *Travelers Ins Co v Carpenter*, 411 F3d 323 (CA 2, 2005).  Third Circuit: *Sirkin v Phillips Colleges, Inc*, 779 F Supp 751 (D NJ, 1991); *Clarke v Unum Life Ins Co of America,* 14 F Supp 2d 1351 (SD Ga, 1998).  Fourth Circuit:  *Dorsey v Bowen*, 828 F2d 246 (CA 4, 1987); *Bass v City of Wilson*, 835 F Supp 255 (ED NC, 1993).  Fifth Circuit: *Everett v Ribicoff,* 200 F Supp 103 (ND Fla, 1961); *Harris v Wal-Mart Stores, Inc*, 205 F3d 847 (CA 5, 2000); Sixth Circuit: *Jeter v Finch*, 310 F Supp 1371 (ED Ky, 1970);  *Marshall v Davis*, 517 F Supp 551 (WD Mich, 1981).  Seventh Circuit: *Smith v Packard*, 98 F 793 (CA 7, 1900); *Schweizer v  Mager*, 297 F 334 (ND Ill, 1924); *Johnson v Runyon*, 47 F3d 911 (CA 7, 1995); Eighth Circuit: *Surrisi v*

(continued…)

4

Supreme Court has adopted the canon and construed many federal laws using it.[5]

This long-established canon still has a place in Michigan law. Though it cannot be relied on to reach a result that is inconsistent with statutory language, it is otherwise entitled to consideration. Plaintiff brought suit under the Michigan Civil Rights Act. As we have stated on prior occasions, the CRA is a broad, remedial statute. *Eide v Kelsey- Hayes*, 431 Mich 26, 36; 427 NW2d 488 (1988). When

_____

(…continued)
*Conwed Corp,* 510 F2d 1088 (CA 7, 1975); *Maune v IBEW, Local #1, Health & Welfare Fund*, 83 F3d 959 (CA 8, 1996). Ninth Circuit: *Mahroom v Hook,* 563 F2d 1369 (CA 9, 1977); *Smith v CMTA-IAM Pension Trust*, 746 F2d 587 (CA 9, 1984); *Carson Harbor Village, Ltd v Unocal Corp,* 270 F3d 863 (CA 9, 2001). Tenth Circuit: *In re Dederick Herzig*, 91 F2d 646 (CA 10, 1937); *Sierra Club v Seaboard Farms Inc*, 387 F3d 1167 (CA 10, 2004). Eleventh Circuit: *Hellums v Webster Industries,* 97 F Supp 2d 1287 (MD Ala, 2000); *Cusumano v Maquipan Int'l, Inc*, 2005 US Dist LEXIS 30257 (MD Fla, 2005). D.C. Circuit: *Bethel v Jefferson*, 589 F2d 631 (1978); *Thomas v Mineta*, 310 F Supp 2d 198 (D DC, 2004).

[5] The United States Supreme Court has used this canon in interpreting: the Securities and Exchange Act, 15 USC 78a *et seq.*, *Tcherepnin v Knight,* 389 US 332, 336; 88 S Ct 548; 19 L Ed 2d 564 (1967); patent laws, *Winans v Denmead*, 56 US 330, 341; 14 L Ed 717 (1854); the federal Motor Carrier Act, 49 USC 306, *McDonald v Thompson,* 305 US 263, 266; 59 S Ct 176; 83 L Ed 164 (1938); revenue statutes, *United States v Hodson,* 77 US 395, 406; 19 L Ed 937 (1870); the Longshoremens and Harbors Act, 39 USC 900 *et seq.*, *Baltimore & Philadelphia Steamboat Co v Norton*, 284 US 408, 414; 52 S Ct 187; 76 L Ed 366 (1932); the Fair Labor Standards Act, 42 USC 12101 *et seq.*, *Mitchell v Lublin, McGaughy & Assoc,* 358 US 207, 211; 79 S Ct 260; 3 L Ed 2d 243 (1959); the Civil Rights Act, 42 USC 1983, *Gomez v Toledo*, 446 US 635, 639; 100 S Ct 1920; 64 L Ed 2d 572 (1980); the Americans with Disabilities Act, 42 USC 12101 *et seq.*, *PGA Tour, Inc v Martin,* 532 US 661, 676; 121 S Ct 1879; 149 L Ed 2d 904 (2003); antitrust laws, *Jefferson Co Pharmacutical Ass'n, Inc v Abbott Laboratories,* 460 US 150, 159; 103 S Ct 1011; 74 L Ed 2d 882 (1983); and the federal Employers' Liability Act, 45 USC 51 *et seq.*, *Atchison T & S F R Co v Buell*, 480 US 557, 562; 107 S Ct 1410; 94 L Ed 2d 563 (1987).

interpreting this statute and similar remedial statutes, it is important to remember the "well-established rule that remedial statutes are to be liberally construed to suppress the evil and advance the remedy." *Id.* at 34 (citing 3 Sands, Sutherland Statutory Construction [4th ed], § 60.01, p 55).

## B. SUPPORT FOR OUR INTERPRETATION OUTSIDE OUR JURISDICTION

There is also support for our interpretation outside this jurisdiction. The language used in the CRA[6] is substantially similar to the language of title III of the Americans with Disabilities Act.[7] For this reason, the caselaw interpreting the Americans with Disabilities Act is instructive with regard to the correct interpretation of our statute.

---

[6] MCL 37.2302 provides in part:

Except where permitted by law, a person shall not:

(a) Deny an *individual* the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status. [Emphasis added.]

[7] 42 USC 12182 (title III) provides:

(a) General rule. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

In *Menkowitz v Pottstown Mem Med Ctr*,[8] the United States Court of Appeals for the Third Circuit decided a case involving almost identical facts. In that case, the defendant hospital suspended the staff privileges of the plaintiff, a disabled orthopedic surgeon. *Id.* at 115. The plaintiff sued, alleging that the hospital had discriminated against him on the basis of his disability. *Id.* at 116. The district court dismissed the claim, deciding that title III protects only those seeking medical care, not the employees and other staff who serve them. *Id.* The Third Circuit reversed, holding that a "medical doctor with staff privileges . . . may assert a cause of action under Title III of the ADA as an 'individual' who is denied the 'full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.'" *Id.* at 122. This is the same conclusion we have reached in interpreting our statute. Because the Third Circuit was interpreting a similar statute under similar circumstances, the *Menkowitz* decision supports the conclusion that we reached the correct interpretation of our statute.

C. OUR INTERPRETATION IS CONSISTENT WITH MICHIGAN LAW

Our conclusion is also consistent with existing Michigan caselaw. The fact that, in considering a similar issue, another Michigan court reached an analogous result gives us confidence that our interpretation of the statute is correct.

---

[8] 154 F3d 113 (CA 3, 1998).

In *Neal v Dep't of Corrections,* the plaintiffs were women inmates in Michigan Department of Corrections facilities who claimed they were victims of sexual harassment. Initially, the Court of Appeals ruled that the prisoners were not protected by the CRA because the prison did not furnish a service to its prisoners. *Neal v Dep't of Corrections*, 230 Mich App 202, 209; 583 NW2d 249 (1998) (*Neal I*). However, on rehearing, the Court of Appeals ruled that the prisoners were protected because the CRA does not preclude its application on the basis of a person's status as a prisoner or inmate. *Neal v Dep't of Corrections* (*On Rehearing*), 232 Mich App 730, 740; 592 NW2d 370 (1998) (*Neal II*). A special panel of the Court of Appeals affirmed the decision in *Neal II* in its opinion in *Doe v Dep't of Corrections*, 240 Mich App 199; 611 NW2d 1 (2000). The special panel conceded that it was possible that the Legislature did not intend the CRA to apply to prisoners. But, it stated, it did not have the liberty to change the meaning of statutory language. *Id.* at 201.

*Neal* arose in a different context. However, the argument advanced by the defendants in that case is the same one advanced by defendants here, that there is an inferred exclusion from the protection of the CRA. *Neal I*, 230 Mich App at 206. In *Neal*, the defendants claimed that penal institutions should be divided into a public side, where discrimination is prohibited, and a nonpublic side, where inmates are not protected. *Id.* In this case, according to defendants, discrimination is not allowed when hospitals are providing services to the public. But, they reason, as regards relationships with the hospitals' physicians, the CRA

8

does not prohibit discrimination. We reject this argument here just as the Court of Appeals did in *Neal.* The statute simply does not preclude its application on the basis of a person's status.

### D. LEGISLATIVE ACQUIESCENCE

Aside from the similarity of the arguments advanced, the Court of Appeals decision in *Doe* is persuasive for another reason. After the special panel's decision, the Legislature amended the CRA specifically to exclude prisoners. When it did so, it had the opportunity to carve out a broader exclusion. However, it did not remove prisons as places of public service, nor did it engage in the artifice of dividing the institution into public and nonpublic areas. The Legislature simply removed prisoners from the protection of the act. It has made no further exclusion of persons or classes of persons from the CRA, nor has it given any indication of an intent to further restrict this remedial statute. Its decision not to insert further exclusionary language is evidence that the Legislature approved the Court's broad interpretation of this statute. See, e.g., *Twork v Munising Paper Co*, 275 Mich 174, 178; 266 NW 311 (1936); *Gordon Sel-Way, Inc v Spence Bros Inc*, 438 Mich 488, 505; 475 NW2d 704 (1991).

### CONCLUSION

The language of the CRA clearly supports the decision in this case. I write separately to stress that the language is not the only consideration that courts should weigh in interpreting a statute. "[T]he purpose of construction is the ascertainment of meaning; nothing that is logically relevant should be excluded."

9

Stephen Breyer *Active Liberty* (New York: Knopf, 2005), p 18, quoting Learned Hand, *The Spirit of Liberty* (New York: Knopf, 1960), p 109. Interpreting a statute involves a search for intent, and courts should be free to use all available interpretative tools in undertaking it. Here, each of the factors I have discussed is relevant to that search.

Marilyn Kelly<br>
Michael F. Cavanagh

STATE OF MICHIGAN

SUPREME COURT

GREGORY HAYNES,

      Plaintiff-Appellant,

v                                       No. 129206

MICHAEL J. NESHEWAT, ROBERT J.
MURRAY, and BRIAN PELTZ,

      Defendants,
and

OAKWOOD HEALTHCARE, INC., and
OAKWOOD HOSPITAL-SEAWAY
CENTER,

      Defendants-Appellees.

_____

MARKMAN, J. (*concurring*).   Having reached the proper result in this case through a proper legal analysis, Justice Kelly in a concurrence to her own majority opinion proceeds to demonstrate that she could have reached the same result through less disciplined means.  Not content to rely, as she does in her majority opinion, on the actual language of the law, Justice Kelly invokes an array of alternative techniques to "interpret" the law in her concurring opinion.   She relies upon a "liberal construction" of the statute in question; she relies upon characterizations of the statute as "broad" and "remedial"; she relies upon a summary description of the law as "ambiguous," therefore apparently affording her the discretion to pick and choose the law she prefers; she relies upon the

Legislature's inaction in the wake of an earlier court decision, equating this to approval of the Court's decision; she disparages the value of dictionaries as an essential tool in the interpretative process; and she relies upon an extraordinarily broad understanding of "legislative history." For the sake of future reference, a further catalogue of language-avoidance "interpretative" techniques would include the following: divining the "spirit of a statute"; relying upon considerations of "public policy"; standardlessly applying "equity"; characterizing statutes with which a judge disagrees as "absurd"; and concocting creative "balancing" and "totality of circumstances" tests. Innovatively applied, each of these techniques can be relied upon to avoid the hard task of having to discern a statute's meaning from its actual language.

> Stephen J. Markman
> Clifford W. Taylor
> Maura D. Corrigan
> Robert P. Young, Jr.