[843 NE2d 739, 810 NYS2d 112]

In the Matter of George Rizzo, Appellant, v New York State Division of Housing and Community Renewal, Respondent.

Argued November 15, 2005; decided December 20, 2005

**POINTS OF COUNSEL**

*Linda Rzesniowiecki,* New York City, for appellant. I. The legislative intent behind the Sound Housing Act and the rent regulation laws mandates the consideration of the new evidence by the Division of Housing and Community Renewal. (*Kalikow 78/79 Co. v State of New York,* 174 AD2d 7; *Matter of Legra v Division of Hous. & Community Renewal of State of N.Y.,* 194 AD2d 677; *Braschi v Stahl Assoc. Co.,* 74 NY2d 201; *Matter of McMurray v New York State Div. of Hous. & Community Renewal,* 135 AD2d 235, 72 NY2d 1022; *Post v 120 E. End Ave. Corp.,* 62 NY2d 19; *Nestor v McDowell,* 81 NY2d 410; *Killington Invs. v Leino,* 148 AD2d 334; *First Natl. Stores v Yellowstone Shopping Ctr.,* 21 NY2d 630.) II. New York City Rent and Rehabilitation Law (Administrative Code of City of NY) § 26-411 (a) (2) provides ample support for the Supreme Court's decision to remit the case to the Division of Housing and Community Renewal for consideration of new evidence. (*Matter of McMurray v New York State Div. of Hous. & Community Renewal,* 135 AD2d 235, 72 NY2d 1022.) III. The Supreme Court did not err when it remitted the proceeding after George Rizzo's attorney advised the court about the new evidence. (*Rebmann v Wicks,* 259 AD2d 972; *Nestor v McDowell,* 81 NY2d 410.) IV. The Division of Housing and Community Renewal (DHCR) has the discretion to revoke or cancel an order granting a certificate of eviction at any time prior to the execution of the warrant if the landlord's circumstances have changed. Under the changed circumstances of this case, DHCR should have accepted the remit order to consider whether the certificate should be revoked or canceled. It was an abuse of DHCR's discretion not to accept the remit or take back the case on its own initiative. (*Nestor v McDowell,* 81 NY2d 410; *Matter of Dworman v New York State Div. of Hous.*

& Community Renewal, 94 NY2d 359; Matter of James v New York City Hous. Auth., 186 AD2d 498; Matter of Dukuly v Aponte, 204 AD2d 189; Davern Realty Corp. v Vaughn, 161 Misc 2d 550.) V. The Division of Housing and Community Renewal has improperly terminated George Rizzo's right to use the apartment as an artist's studio. (Matter of Malacarne v City of Yonkers Parking Auth., 41 NY2d 189; Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston, 30 NY2d 238; Matter of Lower Manhattan Loft Tenants v New York City Loft Bd., 66 NY2d 298; Matter of Meyer & Steffens v Popolizzio, 124 Misc 2d 159; Matter of Fuller v Urstadt, 28 NY2d 315; Reiss v Financial Performance Corp., 97 NY2d 195; Matter of Duell v Condon, 84 NY2d 773.) VI. The owner's bad faith is demonstrated by her financial inability to undertake the alteration project. (Mayfair-York Corp. v McGoldrick, 286 App Div 154; Matter of Village Tenth Co. v Walsh, 40 AD2d 969; Matter of Goldsmith v Gabel, 43 Misc 2d 286; Matter of Mahoney v Altman, 63 Misc 2d 1062; Matter of Malacarne v City of Yonkers Parking Auth., 41 NY2d 189; Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston, 30 NY2d 238.) VII. It was arbitrary and capricious for the Division of Housing and Community Renewal to make a determination that the owner was acting in good faith without holding a hearing. (Powers v Babic, 177 AD2d 432; Matter of McMurray v New York State Div. of Hous. & Community Renewal, 72 NY2d 1022.) VIII. It was arbitrary and capricious for the Division of Housing and Community Renewal to determine that the owner's application was made in good faith, since it was not made for the immediate purpose of altering the premises.

Gary Turk, New York City, and David B. Cabrera for respondent. I. Legislative intent, public policy and controlling case precedent support the Appellate Division decision. (Matter of Kiki Realty Corp. v Weaver, 12 Misc 2d 716; Matter of Ziman v New York State Div. of Hous. & Community Renewal, 153 AD2d 489, 76 NY2d 727, 889; Matter of McMurray v New York State Div. of Hous. & Community Renewal, 135 AD2d 235; People v Newman, 32 NY2d 379.) II. Review after issuance of the Division of Housing and Community Renewal's final order is limited to those facts of record at the time of the Rent Administrator's order. (Matter of Guddemi v State of N.Y., Div. of Hous. & Community Renewal, 138 AD2d 376; Fresh Meadows Assoc. v Conciliation & Appeals Bd., 88 Misc 2d 1003, 55 AD2d 559, 42 NY2d 925; Matter of Plaza Mgt. Co. v City Rent Agency, 37 NY2d 837; Matter of Klaus v Joy, 85 AD2d 603; Matter of Fanelli v

*New York City Conciliation & Appeals Bd.,* 90 AD2d 756, 58 NY2d 952; *Matter of Yonkers Gardens Co. v State of N.Y. Div. of Hous. & Community Renewal,* 51 NY2d 966; *Matter of McMurray v New York State Div. of Hous. & Community Renewal,* 135 AD2d 235; *Matter of Ziman v New York State Div. of Hous. & Community Renewal,* 153 AD2d 489; *Solnick v Whalen,* 49 NY2d 224; *Stone v Goldberg,* 215 AD2d 180.) III. The Rent Administrator's and Housing and Community Renewal Commissioner's reliance on and adoption of the Administrative Law Judge's findings of fact and conclusions of law were neither arbitrary nor capricious—rather they were wholly proper and appropriate. (*Pringle v Herman,* 465 F Supp 643; *Matter of Hennekens v State Tax Commn. of State of N.Y.,* 114 AD2d 599; *Matter of Haz-O-Waste Corp. v Williams,* 103 AD2d 1001; *Matter of Celestial Food Corp. of Coram v New York State Liq. Auth.,* 99 AD2d 25; *Matter of Berenhaus v Ward,* 70 NY2d 436; *Matter of Belnord Holding Corp. v Joy,* 73 AD2d 549; *State Off. of Drug Abuse Servs. v State Human Rights Appeal Bd.,* 48 NY2d 276.) IV. The Division of Housing and Community Renewal's order is supported by a rational basis and is entitled to affirmance. (*Matter of Oriental Blvd. Co. v New York City Conciliation & Appeals Bd.,* 92 AD2d 470, 60 NY2d 633; *Fresh Meadows Assoc. v Conciliation & Appeals Bd.,* 88 Misc 2d 1003, 55 AD2d 559, 42 NY2d 925; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222; *Matter of Cale Dev. Co. v Conciliation & Appeals Bd.,* 94 AD2d 229, 61 NY2d 976; *Matter of Herzog v Joy,* 74 AD2d 372, 53 NY2d 821; *Minton v Domb,* 63 AD2d 36; *Matter of Salvati v Eimicke,* 72 NY2d 784; *Matter of Mounting & Finishing Co. v McGoldrick,* 294 NY 104; *Matter of Plaza Mgt. Co. v City Rent Agency,* 37 NY2d 837.)

## OPINION OF THE COURT

Rosenblatt, J.

In this CPLR article 78 proceeding, we hold that after the New York State Division of Housing and Community Renewal (DHCR) has issued a final determination, concerning an application for a certificate of eviction pursuant to New York City Administrative Code § 26-408 (b) (3) or New York City Rent and Eviction Regulations (9 NYCRR) § 2204.7, a reviewing court may not remit the matter to the agency for de novo review of events that arose after its determination.

I.

Rachel Crespin owns 323 East 53rd Street, a four-story apartment building in Manhattan. Petitioner George Rizzo resides in a rent-controlled unit comprising the third floor of the building. He lives alone in an apartment of some 1,200 square feet which, as of the original certificate of occupancy, contained six rooms. Crespin resides in a unit comprising the second story; she and her husband had been the building's first rent-controlled tenants. The fourth-floor apartment was rent-controlled until its occupant, Elaine Bloedow, died in early January 2002, an event of significance in this litigation. The remaining unit is unregulated.

Crespin bought the building in 1981. In 1996, she filed applications for certificates of partial eviction of Rizzo and Bloedow, explaining that she had been losing money on the property for years. In her application, she relied on New York City Rent and Eviction Regulations (9 NYCRR) § 2204.7, which prescribes when the Rent Administrator may authorize subdivision of an under-occupied, rent-controlled apartment and order partial eviction of its tenant. Crespin sought to evict Rizzo and Bloedow from the front portions of their units, leaving them with considerably smaller apartments, in order to create a new duplex unit from the vacated front rooms.

The New York City Rent and Rehabilitation Law and its implementing regulations require the City's rent agency to issue an order granting a certificate of eviction or partial eviction when "[t]he landlord seeks in good faith to recover possession of a housing accommodation for the immediate purpose of substantially altering or remodeling it" (Administrative Code of City of NY § 26-408 [b] [3]; NY City Rent and Eviction Regulations [9 NYCRR] § 2204.7). Such a certificate, however, may be granted only if two conditions are met: the agency must determine, first, that the housing accommodation in question is under-occupied and contains six or more rooms, excluding bathrooms and kitchen (NY City Rent and Eviction Regulations [9 NYCRR] § 2204.7 [a]), and, second, that, without recourse to eviction, "there is no reasonable possibility that the landlord can make a net annual return of eight and one-half per centum of the assessed value of the subject property" (Administrative Code of City of NY § 26-408 [b] [5] [a]; *see also* NY City Rent and Eviction Regulations [9 NYCRR] § 2204.4 [g] [1]).

Following an audit of Crespin's income and expenses for the "test year" 1996, an inspection of Rizzo's apartment, a fact-

finding hearing in 1999 and a detailed, May 26, 2000 report by an Administrative Law Judge, DHCR granted Crespin's application, on September 18, 2000, and ordered Rizzo and Bloedow to surrender the front halves of their apartments. The agency also ordered Crespin to reduce Rizzo's rent from $673.64 to a maximum of $301.55. With regard to the relevant year, 1996, DHCR's District Rent Administrator noted that the Administrative Law Judge had found no reasonable possibility that Crespin could make a net annual return of 8.5% of the assessed valuation of the property, without recourse to eviction.[1] The Rent Administrator further found that there was no probative evidence of bad faith on Crespin's part; that Rizzo's apartment originally contained six rooms and that a wall had been taken down in the interim; and that it was under-occupied within the meaning of New York City Rent and Eviction Regulations (9 NYCRR) § 2204.7 (a).

Rizzo and Bloedow filed petitions for administrative review. On January 2, 2002, the DHCR Deputy Commissioner denied them. Then, apparently the very next day, Bloedow died, and her apartment became deregulated.

In March 2002, Rizzo commenced this article 78 proceeding, seeking reversal and remittal to DHCR.[2] Supreme Court noted that Bloedow's death had resulted in decontrol of her apartment and held that "[t]he impact of the recent deregulation of Ms. Bloedow's apartment must be considered by the DHCR in determining the owner's ability to meet the $8^{1}/_{2}$% return requirements of the Sound Housing Act." It vacated DHCR's determination, ordered that the evidence of Bloedow's death and its impact be presented to the agency and remitted the application for reprocessing.[3]

---

1.   The ALJ noted that an 8.5% return on the assessed 1996 valuation of the building ($140,000) would be $11,900, but that the net return from the building in 1996 was only $8,419.90. The difference between net return and an 8.5% return was therefore $3,480.10 that year.

2.   In his submissions, Rizzo informed the court of Bloedow's death but did not expressly give that as a reason for reversal and remittal or apply for leave to introduce evidence of the effect of Bloedow's death on Crespin's financial return from the building.

3.   The trial court noted that the other unregulated unit in the building generated $34,020 in income in 1996. The court implicitly reasoned that the vacated apartment would generate similar income, which would exceed the difference between the building's net return and an 8.5% return ($3,480.10 in 1996), and that Crespin would no longer fail to make a net annual return of 8.5% of the assessed value of her property.

DHCR appealed and, by a divided court, the Appellate Division reversed, concluding that the trial court's consideration of evidence not contained in the administrative record exceeded the scope of permissible judicial review. Rizzo appeals as of right (CPLR 5601 [a]), and we now affirm.

## II.

In reviewing orders of the DHCR, courts are limited to the factual record before the agency when its determination was rendered. As a rule, the court may not consider evidence concerning events that took place after the agency made its determination. This follows from a fundamental principle of article 78 review, that "[j]udicial review of administrative determinations is confined to the facts and record adduced before the agency" (*Matter of Yarbough v Franco*, 95 NY2d 342, 347 [2000] [internal quotation marks and citation omitted]). That, of course, is merely another way of saying that an appellate court is bound by the record. In short, "[j]udicial review of an administrative determination is limited to the grounds invoked by the agency" (*Matter of Aronsky v Board of Educ., Community School Dist. No. 22 of City of N.Y.*, 75 NY2d 997, 1000 [1990]; *see generally Matter of Montauk Improvement v Proccacino*, 41 NY2d 913 [1977]).

Rizzo relies on New York City Administrative Code § 26-411 (a) (2), which carves out a narrow exception to the general rule:

> "If application is made to the court by either party for leave to introduce additional evidence which was either offered and not admitted or which could not reasonably have been offered or included in such proceedings before the city rent agency, and the court determines that such evidence should be admitted, the court shall order the evidence to be presented to the city rent agency."

This language, however, should not be interpreted as permitting a court to engage in, or order, a de novo review based on events that took place after the agency made its determination. As the Appellate Division noted, "the admission of subsequent events which occurred after the final agency order would defeat finality and could subject an otherwise final order to endless recurring review" (16 AD3d 72, 78 [2005]). We agree with DHCR that it could not have been the intent of the Legislature to subject the agency's rulings to the prospect of such endless review, based on submissions by tenants or by landlords as to postdetermination events.

We therefore hold that in judicial review of a rent agency decision made pursuant to New York City Administrative Code § 26-408 (b) (3) or New York City Rent and Eviction Regulations (9 NYCRR) § 2204.7, the "additional evidence" that may be admitted under section 26-411 (a) (2) is limited to facts that arose before the agency made its determination. When, as here, DHCR determines that a landlord's application for a certificate of eviction should be granted because, at the time of the application, there was no reasonable possibility that the landlord could make an 8.5% net annual return, a reviewing court may admit additional evidence only if the evidence is relevant to that time-specific determination.

DHCR's inquiry was whether Crespin could make an 8.5% net annual return in the test year 1996. Bloedow's death in 2002 was irrelevant to the DHCR's determination and should not have been considered by Supreme Court. By ordering that the evidence of Bloedow's death be presented to the DHCR, the court exceeded the permissible scope of its review.

## III.

Petitioner and our dissenting colleague cite *Matter of McMurray v New York State Div. of Hous. & Community Renewal* (72 NY2d 1022 [1988]) in support of the claim that Supreme Court correctly remitted the matter to the agency for de novo review. *McMurray* is not on point. It concerned a different provision of the Rent and Rehabilitation Law (Administrative Code of City of NY § 26-408 [b] [1]), the legislative history of which distinguishes it from New York City Administrative Code § 26-408 (b) (5) (a), the provision that is crucial here.

New York City Administrative Code § 26-408 (b) (1), the subject of *McMurray*, makes tenancy for less than 20 years a condition precedent of evicting the tenant of a rent-controlled apartment that the landlord requires for personal use and occupancy. This Court held that "a tenant in possession who accumulates the requisite 20 years of occupancy before the validity of a certificate of eviction is finally determined by the courts is protected from eviction," even when the tenant reaches the 20-year milestone after the certificate of eviction is issued (72 NY2d 1022, 1024).

The provision in *McMurray* was construed in the tenant's favor because the legislative history of that provision, a 1984 amendment, shows a clear intent to protect elderly, long-term and disabled tenants from eviction merely for the sake of an

owner's personal use and occupancy, irrespective of the timing of the landlord's application for a certificate of eviction. For example, the 1984 amendment was expressly made applicable "*to any tenant in possession* at or after the time it [took] effect," regardless of whether the landlord's application occurred before the act took effect (L 1984, ch 234, § 4 [emphasis added]). We held in *McMurray* that the Legislature intended the section 26-408 (b) (1) protection to apply whenever a tenant in possession reaches the 20-year milestone. We are unpersuaded, however, that by enacting New York City Administrative Code § 26-408 (b) (5) (a), the Legislature intended to give a tenant— or, in another case, a landlord—the right to have ongoing de novo review of whether the landlord can make an 8.5% net annual return for as long as the tenant is in possession.

## IV.

We further agree with the Appellate Division that DHCR's determination was supported by substantial evidence and was not arbitrary or capricious.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

CIPARICK, J. (dissenting). Because the Sound Housing Act of 1974 and city rent control laws bestow the New York State Division of Housing and Community Renewal (DHCR), as well as the courts, with discretion to effectuate its goal of avoiding unwarranted evictions and preserving affordable housing, I respectfully dissent.

This case involves the interplay of the Sound Housing Act and the introduction of new evidence under New York City Administrative Code § 26-411 (a) (2). "It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205, 208 [1976]). The starting point is always to look to the language itself and "[w]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning" (*Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington*, 97 NY2d 86, 91 [2001]).

Looking at the plain language of the statutes, I conclude that Supreme Court did not exceed the permissible scope of its review (majority op at 111) but acted reasonably in interpreting these statutes to authorize it to remit the matter to DHCR when, as

here, new evidence arose which tangibly called into question the justification for evicting petitioner from over half of his apartment. The Sound Housing Act as codified in New York City Administrative Code § 26-408 (b) (5) is unambiguous in its requirement that in order to evict a rent controlled tenant for alteration or demolition purposes the agency must find that "there is *no reasonable possibility* that the landlord can make a net annual return of eight and one-half per centum of the assessed value of the subject property" (§ 26-408 [b] [5] [a] [emphasis added]). It is further provided that where a party attempts to introduce new evidence which the court finds admissible, the new evidence must then be remitted to DHCR (Administrative Code of City of NY § 26-411 [a] [2]).[1]

Clearly, the new evidence of the death of the only other rent controlled tenant, Elaine Bloedow, was unavailable earlier, as she died on or about the day the DHCR Deputy Commissioner issued his final order in January 2002, but before the execution of a certificate of eviction. Equally as obvious is that Bloedow's death materially changed the potential income of the building as the apartment became immediately deregulated. Thus, Supreme Court's remittal to the DHCR for consideration of what implications the deregulation of Bloedow's apartment has on the building's financial return fits squarely under the statute. It was an abuse of discretion on the part of DHCR not to accept the remittal from Supreme Court.

Regardless, the majority wishes to narrow the breadth of the statute by limiting for consideration evidence of only events that occurred prior to DHCR's final order (majority op at 111). However, nothing in the language of the statute or its legislative history limits the introduction of evidence based on when it arose. Instead, it explicitly contemplates the late introduction of evidence—after the agency has acted—by requiring the court, during its review, to refer any new relevant evidence to the agency. Thus, under the plain language of the statute, Supreme

---

1. New York City Administrative Code § 26-411 (a) (2) provides in part that when

> "application is made to the court by either party for leave to introduce additional evidence which was either offered and not admitted or which could not reasonably have been offered or included in such proceedings before the city rent agency, and the court determines that such evidence should be admitted, the court shall order the evidence to be presented to the city rent agency."

Court acted properly and within its discretion by ordering the new evidence to be presented to DHCR.

Assuming arguendo that the plain language was not so clear, the remedial nature of the statute and the legislative history of the Sound Housing Act require DHCR to consider this change in circumstances. When faced with the application of a remedial statute, we must give it liberal construction to carry out the reform intended and to spread its beneficial results as widely as possible (*see Post v 120 E. End Ave. Corp.*, 62 NY2d 19, 24 [1984]). "[S]ince rent-control laws are remedial in nature and designed to promote the public good, their provisions should be interpreted broadly to effectuate their purposes" (*Braschi v Stahl Assoc. Co.*, 74 NY2d 201, 208 [1989] [citations omitted]).

"It is fundamental that in construing the words of a statute [t]he legislative intent is the great and controlling principle" (*Braschi*, 74 NY2d at 207 [internal quotation marks omitted]). The purpose of the Sound Housing Act as proffered by its sponsors is to "prohibit[ ] the eviction of tenants from rent controlled housing for demolition or alteration unless there is no reasonable possibility of the landlord making a fair return without eviction for the purposes of demolition or alteration" (Sponsor's Mem, at 1, Bill Jacket, L 1974, ch 1022). In explaining the need for the Sound Housing Act, the sponsors made reference to the fact that "[h]ousing of the type being lost can no longer be built in this city" and "[e]ven subsidized housing comes in at rentals far beyond the means of working people of moderate means" (*id.*). The memorandum further noted that "[t]he housing being destroyed also houses many of the City's elderly people whose only income is a social security check" (*id.* at 2). The Mayor of the City of New York in support of this bill stated that:

> "Indiscriminate demolition has had a debilitating affect on entire neighborhoods in the City. Long term residents are displaced and the stability of communities [is] threatened. The underlying assumption in this bill is that tenants shall not be evicted if the building is physically sound or economically viable" (Letter from City of NY Office of Mayor, May 3, 1974, Bill Jacket, L 1974, ch 1022).

The legislative history and the underlying rationale behind New York City's rent regulatory framework are forthright in their intent to prevent unwarranted evictions and to preserve

affordable housing, yet the majority's decision subjects the tenant to eviction from most of his apartment despite the appearance that the building is now economically sound. In fact, petitioner's situation is illustrative of exactly what the rent regulatory laws aim to protect. Rizzo is 84 years old and has lived in the apartment for 45 years. The record reflects that he uses the apartment both to live and to work as an artist, and there is no indication that he is anything but a good tenant. To partially evict Rizzo, leaves him with under 500 square feet of space for living and working and deprives him of more than half the apartment.[2]

Now while I concede that it is likely that New York City Administrative Code § 26-408 (b) (3) and (5) using the 1996 test year would permit the alteration of the apartment by the landlord for an increase in her net annual return, it is undisputed that the situation here has changed dramatically since Bloedow's death.[3]

Bloedow lived on the fourth floor. Upon her death, the apartment she had occupied was deregulated and the landlord became free to charge the substantially higher market rent.[4] If this scenario increases the landlord's return beyond 8½%, which it likely will, there would be no need or legal basis to resort to the drastic measure of evicting Rizzo. There is nothing in the statute or our precedent that mandates eviction of a rent controlled tenant based on an obsolete snapshot computation of the building's finances. Instead, the statute calls for eviction only when there is "no reasonable possibility" that the landlord could obtain the 8½% return. Under the circumstances, the

2. The certificate of eviction grants the landlord the right to evict Rizzo from 60% of the apartment.

3. Rizzo and Bloedow occupied two out of the four units and were the only rent controlled tenants in the building. The landlord initially sought to evict both of them from part of their apartments to create an unregulated duplex apartment.

4. The building is composed of four apartments, each occupying one floor. According to the DHCR Rent Administrator, in 1996 the unregulated ground floor apartment rented for $2,835 per month; the second floor apartment which is occupied by the owner was given a rental value of $1,850 per month; Rizzo's third floor apartment is subject to rent control and the income generated from that apartment was $626 per month; the fourth floor apartment was subject to rent control that year and brought in income of $613.87 per month. This left the landlord with a profit margin slightly over 6%. The landlord would have had to take in an additional $290 a month to exceed the statutory 8½%. Now that the fourth floor apartment is deregulated, Rizzo argues that the profit margin should well exceed 8½% of the assessed value.

proper action is to do exactly what Supreme Court did—remit the matter to DHCR to consider this new evidence pursuant to New York City Administrative Code § 26-411 (a) (2) and reconsider the landlord's application for a certificate of eviction.

"Statutes are ordinarily interpreted so as to avoid objectionable consequences and to prevent hardship or injustice" (*Braschi*, 74 NY2d at 208). Thus the Sound Housing Act should be liberally construed to prevent unsubstantiated evictions. To effectuate this goal, DHCR has the power to revisit the issue of economic viability when the circumstances drastically change under New York City Administrative Code § 26-411 (a) (2). Despite the clear legislative goals and the inherent power of both DHCR and the courts to revisit the issue of whether the eviction is justified economically, the majority chooses to disregard the equitable and remedial nature of the statute and read into the statute a bright-line rule setting an arbitrary time frame when new evidence may be considered post final agency determination.

What the majority misconstrues is that remedial laws do not always fit squarely into a bright-line rule. By the majority's own account, had the rent controlled tenant died one day prior to the issuance of the DHCR order, rather than on or about the day of its issuance, remittal would then be appropriate and the agency would have been compelled to consider the new evidence. This arbitrary cutoff date does nothing to enforce the rent control laws but instead undermines them by allowing another rent controlled unit to be removed from the market. Instead, due to the drastic nature of an eviction, albeit a partial eviction, the interests of the public would be better served if the court and the agency maintained and exercised its power to revisit the need for the eviction at all times prior to the actual execution of the warrant.

Indeed, our prior holdings also dictate a different result than that reached by the majority. In *Matter of McMurray v New York State Div. of Hous. & Community Renewal* (72 NY2d 1022 [1988]), DHCR issued a certificate of eviction against a rent control tenant after the landlord sought possession for its own use under New York City Administrative Code § 26-408 (b) (1). After the administrative proceedings and issuance of the certificate of eviction the tenant sought judicial review. During this time, the tenant became subject to the "20 year rule" which prohibits a rent controlled tenant's eviction by the landlord for its own personal use where the tenant has resided in the apart-

ment for 20 years or more (*see* Administrative Code of City of NY § 26-408 [b] [1]). The Court held that "a tenant in possession who accumulates the requisite 20 years of occupancy before the validity of a certificate of eviction is finally determined by the courts is protected from eviction" (*McMurray*, 72 NY2d at 1024).

Despite the finality of DHCR's issuance of a certificate of eviction, the *McMurray* court found that the significant change of circumstances should be considered. Likewise, the circumstances in this instance have changed drastically since DHCR's final order. If these changes were considered, the outcome of the application before DHCR would likely be affected as the landlord has already accomplished her goal of increasing the potential return having recouped the other rent controlled apartment. Thus, to subject petitioner to an eviction without considering this significant change offends the spirt of the remedial rent control laws.

While, of course, the need for finality in administrative determinations generally is a noble goal, drawing an arbitrary line does not serve a rational purpose here as it promotes the eviction of innocent long-term tenants from their homes. The need to preserve the affordable housing stock clearly outweighs DHCR's need for finality in this situation as finality merely alleviates the agency's workload but does nothing to effectuate the goals of the rent regulatory framework (*cf. Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359 [1999] [holding that despite the statutory requirement that a tenant respond to a luxury deregulation income request within 60 days, failure to timely comply does not automatically result in vacancy decontrol if tenant has good cause for responding late]).

DHCR's insistence on finality is also contrary to general rent regulatory eviction principles and its other remedial statutes. Under RPAPL 749 (3), for example, a court has the power to vacate a warrant of eviction at any point prior to its execution for good cause.[5] Although this proceeding has not yet resulted in the issuance of a warrant of eviction, this analysis is demonstrative of the court's power to prevent undue evictions. For example, had a warrant of eviction issued based on a tenant's failure to pay rent arrears, a court could stop the eviction and

---

5. The issue of whether RPAPL 749 (3) should apply to petitioner is not before the Court as no warrant of eviction has been issued at this point.

vacate the judgment for good cause if the tenant paid the arrears after issuance of the warrant (*cf.* RPAPL 753 [4] [providing that if a landlord prevails on a holdover proceeding seeking possession of a residential premises based on a lease violation, the court must give the tenant 10 days to cure the violation before a warrant may issue]). Regardless of the inherent power of the court to stop evictions for good cause, the majority herein chooses to read the rent regulatory laws as offering less protection to the lease abiding tenant than the one who openly violates the terms of the landlord-tenant relationship.

In light of clear legislative intent and a plain language provision obligating the court to refer newly discovered relevant evidence to DHCR and further recognizing the agency's discretion to revisit the need for the tenant's eviction, I cannot reconcile the majority's narrow reading of this inherently flexible remedial statute. As such, I would reverse the Appellate Division and reinstate the order of Supreme Court.

Chief Judge KAYE and Judges G.B. SMITH, GRAFFEO, READ and R.S. SMITH concur with Judge ROSENBLATT; Judge CIPARICK dissents and votes to reverse and reinstate the order of Supreme Court in a separate opinion.

Order affirmed, with costs.