# State of New York
# Court of Appeals

## MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 33
In the Matter of West 58th Street
Coalition, Inc., et al.,
   Respondents-Appellants,
      v.
City of New York, et al.,
   Appellants-Respondents,
New Hampton LLC, et al.,
   Appellants-Respondents.

Barbara J. Graves-Poller, for appellants-respondents City of New York, et al.
Jeremy B. Honig, for respondents-appellants West 58th Street Coalition, Inc., et al.
Coalition for the Homeless, Inc., amicus curiae.

MEMORANDUM:

The order of the Appellate Division should be modified in accordance with this memorandum, with costs to respondents, as so modified affirmed, and certified question answered in the negative.

- 1 -

In 2018, the City of New York (the City) published a notice of its intention to contract with a nonprofit services and housing provider to open a homeless shelter for approximately 150 employed or job-seeking men in an existing building located in Manhattan.  The building, constructed in 1910, operated as a "single room occupancy" (SRO) tenement building and subsequently a hotel.  After a public hearing on the City's plan to open the shelter at the proposed location, the Department of Buildings (DOB) approved two applications permitting certain renovations to be made to the building for its use as a homeless shelter in "Group R-2" of the New York City Building Code's (the Building Code) use and occupancy classification scheme.  DOB subsequently issued a temporary certificate of occupancy (TCO) for certain floors of the building based on its classification in "Group R-2."

Petitioners—a coalition of neighbors formed to oppose the opening of the shelter, the owner of an adjacent building, and individuals who live nearby, including some who share a wall with the proposed shelter—commenced this CPLR article 78 proceeding challenging the City's plan to "open a large homeless shelter in an unsafe building located just steps from Central Park" in their "otherwise . . . thriving neighborhood."  They argued that the City's decision to open the shelter was arbitrary and capricious because, among other reasons, the shelter was improperly classified as a "Group R-2" building (as opposed to "Group R-1")—a classification that permitted continued use of the historic building without modification of the residential spaces to comply with the current Building Code.[1]

---

[1] As the Appellate Division observed, buildings constructed before 2008 are generally exempt from the provisions of the current Building Code and are required instead to

Despite the building's decades-long operation as an SRO and hotel, petitioners contended, in light of certain internal structural characteristics, that the building would become a "safety hazard" if operated as a homeless shelter.

Supreme Court denied the application and dismissed the petition, concluding, among other things, that the City's determination that the planned use of the building as a specialized homeless shelter warranted its placement in the "R-2" classification group was rational, noting that the issuance of the partial TCO indicated that DOB determined the building was in compliance with applicable laws (2019 WL 1901379, 2019 NY Misc LEXIS 2010 [Sup Ct, NY County 2019]). Although the Appellate Division agreed that "respondents rationally determined that the subject building is a class A multiple dwelling in the 'R-2' occupancy group which represents a continuation of a preexisting use group classification and is grandfathered from compliance with the current New York City Building Code," the court modified the order by remitting to Supreme Court with the direction to conduct "a hearing on whether the building's use is consistent with general safety and welfare standards" (188 AD3d 1, 14 [1st Dept 2020]).

As both courts below concluded, the City's classification of the building was rational. Under the Building Code, "Group R-2" includes buildings occupied for "permanent residence purposes," defined as those occupied for 30 consecutive days or more—such as "[a]partment hotels (nontransient)" (Administrative Code of City of NY §§

_____

comply with a prior version of the Code unless there is a change in use or occupancy of the building or certain, enumerated alterations are made, which must be completed in accordance with the current Code (*see* Administrative Code of City of NY §§ 28-102.4; 28-102.4.2; 28-102.4.3).

310.1.2; 27-2004[a][8][a]).   Here, the building's "R-2" classification was based on evidence that residents would occupy their dwelling units, on average, for at least 30 days given the nature of the services and programs that would be offered there.   Accordingly, Supreme Court properly dismissed the petition.

The Appellate Division erred in remitting to Supreme Court for a hearing on whether the building's use as a homeless shelter was "consistent with general safety and welfare standards."   In this CPLR article 78 proceeding, the scope of judicial review does not extend past the question of whether the challenged determinations were irrational, which is a question of law (*see* CPLR 7803[3]; *Matter of Khan v New York State Dept. of Health*, 96 NY2d 879, 880 [2001]).   Upon concluding that an authorized agency has reviewed a matter applying the proper legal standard and that its determination has a rational basis, a court cannot second guess that determination by granting a hearing to find additional facts or consider evidence not before the agency when it made its determination (*see Matter of Rizzo v New York State Div. of Hous. & Community Renewal*, 6 NY3d 104, 110 [2005]).   Accordingly, it was improper for the Appellate Division to remit for plenary judicial proceedings to address "general safety and welfare" issues, thereby contravening the applicable standard of judicial review in this context and inviting inconsistent enforcement of the Building Code.

We need not address the remaining arguments raised by the parties.

Order modified in accordance with the memorandum herein, with costs to respondents, as so modified affirmed, and certified question answered in the negative. Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Garcia and Wilson concur.

Decided May 27, 2021