Matter of Mantilla v New York City Dept. of Hous. Preserv. & Dev. (2025 NY Slip Op 07079)

Matter of Mantilla v New York City Dept. of Hous. Preserv. & Dev.

2025 NY Slip Op 07079

Decided on December 18, 2025

Court of Appeals

Cannataro

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 18, 2025

No. 111 

[*1]In the Matter of Kermit Mantilla, Appellant,
vNew York City Department of Housing Preservation and Development, Respondent, et al., Respondent.

Dennis Fan, for appellant. 
Chase Henry Mechanick, for respondent New York City Department of Housing Preservation and Development.
The Legal Aid Society, amicus curiae.

CANNATARO, J.

The issue presented by this appeal is whether there is a rational basis for the respondent agency's determination that petitioner was not entitled to succession rights to the Mitchell-Lama apartment formerly leased to his deceased brother because petitioner failed to meet his burden to establish that the apartment was his primary residence for the one-year period before his brother's death. We agree with the Appellate Division that there was a rational basis for the agency's determination and therefore affirm.
In August 2018, petitioner Kermit Mantilla came to New York from his Florida residence to care for his brother, a tenant in a Mitchell-Lama apartment who was suffering from a terminal illness [FN1]. Following [*2]the tenant's death in March 2020, petitioner applied for succession rights to the apartment. Petitioner, a senior citizen, was required to establish that he was an eligible family member; that he was listed on income documentation, such as income affidavits or recertifications; and that he lived in the apartment with the tenant as his primary residence for at least the one-year period immediately prior to the date the tenant permanently vacated the apartment, March 21, 2019 through March 21, 2020 (see 28 RCNY 3-02 [p] [3]). The housing company rejected petitioner's application, finding that he failed to prove that the apartment was his primary residence during the one-year period prior to his brother's death.
Respondent agency, the New York City Department of Housing Preservation and Development (HPD) notified petitioner of his right to appeal the determination and that he could submit additional documentation for consideration in connection with the appeal. HPD advised that petitioner was required to "prove your primary residence in the subject apartment for the requisite time period, even if you have been included on the relevant income affidavits or income recertifications." HPD also attached a copy of the rules governing succession rights and the factors to be considered in determining primary residency. HPD included a list of suggested documents that could be used to establish primary residency—including documents from the Social Security Administration or other government agencies, Department of Motor Vehicles documents, utility bills and bank statements—and further advised that petitioner "submit as many of the listed documents as you can, since this is your only opportunity to present your succession rights claim for administrative review." Additionally, the agency cautioned petitioner that, "you must submit copies of your New York State tax returns or explain why you were not legally obligated to file such tax returns for the relevant co-residency period" and included a form for petitioner to use to request certified copies of his State tax returns.
Petitioner, represented by counsel, filed an administrative appeal in October 2020. In support, he submitted income certifications and the owner's Certifications of Compliance from September 2018 through November 2019. He also submitted documents from August 2018, designating petitioner as his brother's health care proxy and power of attorney, but giving petitioner's home address in Miami, Florida. Petitioner submitted statements from his brother's checking account, dated December 2018 through March 2020, naming petitioner as power of attorney and reflecting numerous ATM and debit card transactions in New York City. Petitioner also provided correspondence addressed to him at the New York apartment—including letters pertaining to Medicaid, Supplemental Nutrition Assistance Program (SNAP) and Home Energy Assistance Program (HEAP) benefits from prior to March 2019 and a July 2020 letter from the Social Security Administration. Petitioner also provided two letters regarding SNAP benefits addressed to him at the subject apartment dated April and May 2019.
The administrative hearing officer found that petitioner failed to establish co-residency during the relevant one-year period. Initially, the hearing officer found petitioner's claim that the subject apartment had been his primary residence since August 2018 was contradicted by documents addressed to him at a North Miami, Florida address during that timeframe—specifically, a February 2019 letter from the Social Security Administration and bank statements from petitioner's Wells Fargo account for the period from October 2018 through January 2019. In addition, the hearing officer considered undated documents, documents dated outside of the one-year period and documents that did not include an address but determined such documents did not prove the requisite co-residency. The hearing officer likewise concluded that the statements from 2018 through 2020 for tenant's bank account, listing petitioner as power of attorney, were not "credible, sufficient and reliable proof" that petitioner resided in the apartment as his primary residence. The hearing officer observed that the only documents that reflected petitioner's address as the subject apartment during the required co-residency period were the April and May 2019 letters regarding SNAP benefits. Further, the hearing officer noted that petitioner had maintained his connection to [*3]Florida, as he had kept his Florida driver's license throughout the co-residency period [FN2]. Based on these findings, the hearing officer denied the appeal, concluding that petitioner failed to meet the eligibility requirements. The opinion made no mention of petitioner's failure to submit tax returns.
Petitioner then commenced this CPLR article 78 petition seeking to annul the agency's determination. Supreme Court granted the petition, characterizing the reasons stated for the denial as irrational, and granted petitioner's application for succession rights.
A majority of the Appellate Division reversed, on the law, denied the petition and dismissed the proceeding (230 AD3d 1006 [1st Dept 2024]). The Court held that the agency had a rational basis to affirm the denial of succession rights, as petitioner failed to meet his burden to produce documents establishing that the apartment was his primary residence, and he failed to provide a necessary component of the succession rights application, i.e., tax returns or proof that he was not required to file same.
Two Justices dissented, opining that petitioner's documentary evidence was sufficient to establish that the apartment was his primary residence for the relevant period, and that, as a result, there was no rational basis for the denial of his application.
Petitioner appeals as of right pursuant to CPLR 5601 (a).* * * *
"[I]n reviewing an administrative agency determination, [courts] must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious. An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009] [internal quotation marks and citation omitted]). "This standard is, of course, an extremely deferential one" (Matter of Beck-Nichols v Bianco, 20 NY3d 540, 559 [2013]). "If the court finds that the determination is supported by a rational basis, it must sustain the determination even if the court concludes that it would have reached a different result than the one reached by the agency" (Matter of Peckham, 12 NY3d at 431).
28 RCNY 3-02 (p) (3) establishes the procedure for granting succession rights to a family member of a tenant in a Mitchell-Lama apartment in New York City. Here, there is no dispute that petitioner is both an eligible family member, as the tenant's brother (28 RCNY 3-02 [p] [2] [ii] [A]), and that he was listed on the appropriate income affidavits (28 RCNY 3-02 [p] [3]). The only question is whether petitioner satisfied the burden of proving that the apartment was his primary residence for at least one year immediately prior to the date the tenant permanently vacated the apartment.
Section 3-02 (n) (4) sets forth the criteria for determining whether the successor family member has resided in the apartment as their primary residence. The burden is on the applicant to provide proof that the subject apartment is their primary residence, "including, but not limited to certified New York State income tax returns, utility bills, and voter registration data" (28 RCNY 3-02 [n] [4] [iv]). Among the relevant circumstances to be considered is whether the individual "specifies an address other than such dwelling unit as his or her place of residence or domicile in any tax return, motor vehicle registration, driver's license or other document filed with a public agency" (28 RCNY 3-02 [n] [4] [i]).
Based on the agency requirements above, and the applicable law, there was a rational basis for the agency's determination that petitioner failed to meet his burden to establish primary residency. Although petitioner was included on the income affidavits (and the building increased rent for the subject apartment on that basis), inclusion on those documents alone did not establish that the apartment was petitioner's primary residence. To the contrary, it was a baseline requirement, which, if not satisfied, would result in the application of a presumption against primary residency (see 28 RCNY 3-02 [p] [3]). As noted by the hearing officer, the remaining documents within the one-year residency period that tended to show the subject apartment was petitioner's residence were limited to letters from two consecutive months regarding SNAP benefits. It was not irrational for the hearing officer to conclude that this evidence failed to establish [*4]the apartment was petitioner's primary residence for the entire one-year period given the mixed facts presented by the record as a whole [FN3]. In addition, the bank records for tenant's bank account listing petitioner as power of attorney were reasonably deemed insufficient to prove petitioner's primary residence, especially given petitioner's failure to submit bank records in his own name addressed to the subject apartment during the relevant period. Nor was it irrational, in the face of this lack of evidence, for the hearing officer to attach significance to petitioner's failure to submit any of the additional documentation addressed to him at the apartment suggested by the agency, particularly where that documentation is among the facts and circumstances to be considered in determining primary residence as specified in the agency rules (see 28 RCNY 3-02 [n] [4]).
Petitioner maintains that the agency's determination was arbitrary because the hearing officer refused to consider documents that fell outside the one-year window in support of his application, yet considered information outside of that window period against him. We do not read the hearing officer's opinion in that manner, but rather to indicate that the hearing officer reviewed undated documents and documents outside the window and determined that those documents were insufficiently probative to establish principal residency during the relevant period.
Finally, the Appellate Division should not have considered petitioner's failure to either provide New York State tax returns or explain why he was not legally obligated to do so. "[J]udicial review of an administrative determination is limited to the grounds invoked by the agency" (Matter of Rizzo v New York State Div. of Hous. & Community Renewal, 6 NY3d 104, 110 [2005] [internal quotation marks and citation omitted]; see also Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758 [1991]). The tax return requirement was not part of the agency's determination and is therefore unreviewable in the context of this CPLR article 78 proceeding.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

RIVERA, J. (dissenting):

Petitioner Kermit Mantilla cared for his terminally ill brother until his brother passed away. Respondent New York City Department of Housing Preservation and Development (HPD) denied petitioner's application for succession rights to his brother's Mitchell-Lama apartment on the ground that petitioner failed to establish that the apartment was his primary residence in the year immediately preceding his brother's death. Petitioner supported his application with documents establishing that, during the relevant period, he was a senior citizen of limited means who received social security and New York State benefits, had been designated his brother's health care proxy and power of attorney, had relocated from Florida to care for his brother for the last year and a half of his life, and was listed on the apartment's required income recertifications as a member of his brother's household, thus leading the apartment's monthly rent to increase to reflect petitioner's income. HPD's determination that petitioner's submissions were insufficient to prove his co-residency in the apartment during the relevant period was irrational, as Supreme Court and the dissenting Appellate Division Justices concluded below. I would therefore reverse the Appellate Division's order and grant the petition to annul HPD's determination denying petitioner's application seeking succession rights.I.
Petitioner is the younger brother of Latin Jazz percussionist and bandleader Raymond Mantilla.[FN1] Throughout his life, Ray played with Latino music luminaries such as Eddie Palmieri, Johnny Pacheco, Manny Oquendo, and Ray Barretto, and he played on recordings of jazz greats Max Roach, Herbie Mann, and Charles Mingus (see Giovanni
Russonello, Ray Mantilla, Percussionist Who Transcended Genres, Dies at 85, NY Times, March 28, 2020, available at https://www.nytimes.com/2020/03/28/arts/music/ray-mantilla-dead.html [last accessed Dec. 4, 2025]; All About Jazz, Ray Mantilla, December 31, 2020, available at https://www.allaboutjazz.com/musicians/ray-mantilla [last accessed Dec. 4, 2025]).
In 2018, petitioner moved from Florida to New York City to care for Ray, who was diagnosed with lymphoma [FN2] in 2017 and required around-the-clock care after a fall in July 2018. Ray designated petitioner as his health care proxy and executed a durable power of attorney (POA) naming petitioner as his attorney-in-fact in August 2018. The POA authorized petitioner to use Ray's checking account. According to petitioner, as Ray's cancer progressed, he underwent chemotherapy and needed constant supervision. The brothers were senior citizens at the time—Ray was 83 years old and petitioner was 65 years old. Moreover, the brothers subsisted almost entirely on their limited monthly social security benefits, which were approximately $600 per month for Ray and approximately $850 per month for petitioner. Since the brothers could not afford full-time professional care for Ray, petitioner took on the responsibility of managing Ray's medical appointments, caring for his physical needs, including bathing him, and paying for transportation, groceries, and other household needs with their limited funds.
Ray lived in a Mitchell-Lama apartment in the Manhattan Plaza development in Manhattan's Hell's Kitchen neighborhood, near Times Square. The Mitchell-Lama program is a New York State initiative that provides affordable housing to middle- and low-income residents (see Private Housing Finance Law [PHFL] §§ 571, 574, 574-a). Mitchell-Lama rents are tied to household income, which residents must confirm annually as part of their recertifications. Beginning in September 2018, petitioner was listed on the [*5]income recertifications for the apartment as part of Ray's household, and the apartment's rent was increased effective November 2018 and June 2019 to reflect petitioner's additional income.[FN3] Petitioner also signed various leasing documents included in the recertification materials that list him as a resident of the apartment.[FN4]
Additionally, in 2018 and 2019, petitioner applied for and received various public benefits available to New York residents. He obtained Medicaid starting in January 2019, Supplemental Nutrition Assistance Program (SNAP) food stamps starting in December 2018, and Home Energy Assistance Program (HEAP) benefits starting in February 2019, to assist with the apartment's heating expenses.
Petitioner cared for his brother for approximately one and a half years, until Ray passed away due to complications of lymphoma on March 21, 2020, at 85 years old. Petitioner informed the authorities of Ray's death and was listed on his death certificate, issued two days after his death. At that time, and in the midst of the COVID-19 pandemic, petitioner was still listed as a resident of the Mitchell-Lama apartment.II.
Under New York City's regulations governing City-supported Mitchell-Lama developments, senior citizen family members of Mitchell-Lama tenants, like petitioner, are eligible to obtain succession rights to the tenant's Mitchell-Lama unit if they lived with the tenant and the apartment was their primary residence for the one year immediately preceding the time when the tenant vacated the apartment (see 28 RCNY 3-02 [n] [4], [p]). In petitioner's case, the required co-residency period during which he had to establish primary residency was from March 21, 2019, to March 21, 2020, the date of Ray's death. Under the regulations, an applicant seeking succession may satisfy the primary residence requirement based on documentary evidence, which may include, but is not limited to, their tax returns, motor vehicle registration, driver's license, voter registration record, or other documents filed with a public agency (see 28 RCNY 3-02 [n] [4]). The regulations also require HPD to consider, among other factors, whether the applicant lists an address other than the Mitchell-Lama apartment as their place of residence or domicile in the aforementioned documents, and whether the applicant spent at least 183 days in the apartment during the preceding calendar year (see 28 RCNY 3-02 [n] [4]). Additionally, the regulations require that the applicant was listed on the income documentation submitted during the relevant co-residency period, including income affidavits or recertifications (see 28 RCNY 3-02 [p] [3]). "In the succession context, . . . the principal purpose of the income affidavit is to provide proof of the applicant's primary residence" (Matter of Murphy v New York State Div. of Hous. & Community Renewal, 21 NY3d 649, 654 [2013]).
Petitioner applied for and was denied succession rights by Manhattan Plaza. On administrative appeal, HPD denied the succession petition on the ground that petitioner did not fulfill the primary residence requirement. The HPD hearing officer (HO) stated that they "ha[d] no reason to doubt that [petitioner] visited and provided care for the tenant in the [Mitchell-Lama] apartment before the tenant's death," but found that petitioner's documentary evidence of primary residency was inadequate. The HO noted that petitioner "did not submit any bank statements in his own name, credit card statements, utility bills, voter registration documentation, department of motor vehicles documentation, medical statements[,] insurance documents[,] or other general correspondence addressed to him at the [Mitchell-Lama] apartment [during] [*6]the required co-residency" year. The HO also commented that "[a]ccording to [the] 2019 [income] recertification documents[,] [petitioner] received [s]ocial [s]ecurity benefits, but he did not submit any documentation from the Social Security [A]dministration as proof that he resided in the [Mitchell-Lama] apartment as his primary residence in 2019 or [at] any time during the required co-residency period." The HO further noted that petitioner did not submit a New York State driver's license issued within the relevant period.
Petitioner commenced this article 78 proceeding to annul HPD's determination. Supreme Court granted the petition, concluding that HPD's decision failed to adequately consider petitioner's circumstances while caring for his sick brother and his documentary evidence establishing the apartment as his primary residence during the required co-residency period. That evidence included the relevant income recertification documents that listed petitioner as a member of his brother's household, the letters about petitioners' SNAP benefits from April and May 2019 addressed to him at the Manhattan Plaza apartment, and the statements from Ray's bank account over which petitioner had a POA. Supreme Court also concluded that HPD relied too heavily on the documents not produced by petitioner, rather than those that he had submitted. The Appellate Division reversed, over a two-Justice dissent (230 AD3d 1006 [1st Dept 2024]). Noting petitioner's failure to submit, from the relevant period, bank statements from his own checking account, social security documentation addressed to him at the Manhattan Plaza apartment, a New York State driver's license, credit card statements, utility bills, or medical statements, the majority held that "the record shows that HPD had a rational basis to affirm the denial of petitioner's succession rights" (id. at 1007-1008). The dissent concluded that petitioner's documentary evidence—specifically, the income recertification documents, SNAP printouts, proof of POA for Ray's bank account, and Ray's death certificate, dated March 21, 2020, which identified petitioner as the informant and listed the Manhattan Plaza apartment as his address—adequately established that the apartment was his primary residence for at least one year prior to Ray's death (id. at 1008-1009 [Webber, J.P., and Moulton, J., dissenting]). As for the documents that the majority noted petitioner did not submit, the dissent explained that the applicable list of documents that may establish primary residency is non-exhaustive (see 28 RCNY 3-02 [n] [4]).
I agree with the dissent below that HPD improperly emphasized what petitioner failed to submit, rather than what he actually proffered in support of his application. I also agree with the dissent's conclusion that petitioner's submissions establish his primary residency in the Mitchell-Lama apartment during the requisite co-residency period, and accordingly, HPD's denial of petitioner's application for succession was irrational.III.
It is well settled that when a court reviews an administrative agency's determination in a CPLR article 78 proceeding, it "must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious" (Murphy, 21 NY3d at 652 [internal quotation marks omitted]). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (id. [internal quotation marks omitted]; see also Matter of Pell v Board of Educ. of Union Free Sch. Dist. No. 1 of Towns of Scarsdale and Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). "If the determination has a rational basis, it [must] be sustained, even if a different result would not be unreasonable" (Matter of Ward v City of Long Beach, 20 NY3d 1042, 1043 [2013]), and "even if the court concludes that it would have reached a different result [in the first instance] than the one reached by the agency" (Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]).
"Judicial review of administrative agency determinations is confined to the facts and record adduced before the agency" (Matter of Yarbough v Franco, 95 NY2d 342, 347 [2000] [internal quotation marks omitted]). Further, "[t]he inference-making function, as it is exercised at the evidentiary or fact-finding level, is exclusively that of the administrative agency" (State Div. of Human Rights v Wagner, 39 NY2d 865, 866 [1976]). A court cannot "substitute its judgment for that of" the agency or interfere with the [*7]agency's "exercise of discretion . . . unless there is no rational basis for the exercise of discretion or the action complained of is arbitrary and capricious" (Pell, 34 NY2d at 230-231, 232 [internal quotation marks omitted]). Accordingly, this Court has described the standard of review for administrative agency determinations as "extremely deferential" (Matter of Beck-Nichols v Bianco, 20 NY3d 540, 559 [2013] [citation omitted]).
However, our deference to agency decisionmaking is not without limitation (see 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 181 [1978]). We cannot ignore the lack of a rational basis, or the irrational exercise of discretion, on the part of an agency that denies a petition for succession rights (see Murphy, 21 NY3d at 652; see also 300 Gramatan Ave. Assoc., 45 NY2d at 181; Pell, 34 NY2d at 230-231). Agencies must make an informed determination based upon the whole record and cannot simply ignore relevant evidence (see 300 Gramatan Ave. Assoc., 45 NY2d at 181 [citations omitted]).
As we have previously recognized, regulations providing for succession rights to Mitchell-Lama apartments prevent resident dislocation and thus serve an "important remedial purpose" (Murphy, 21 NY3d at 653). "Succession is in the spirit of the [Mitchell-Lama] statutory scheme, whose goal is to facilitate the availability of affordable housing for low-income residents and to temper the harsh consequences of the death or departure of a tenant for their . . . family members" (id.). Senior citizen applicants aged 62 years or older, like petitioner, must establish one year of primary residency in the Mitchell-Lama apartment immediately preceding the tenant's death or departure to establish succession rights to the apartment (see 28 RCNY 3-02 [p] [2] [ii] [A], [iv], [3]).
Based on the agency record, petitioner established that he lived with his brother in the Mitchell-Lama apartment and that it was his primary residence during the required co-residency period from March 21, 2019, to March 21, 2020. In support of his initial succession application and his administrative appeal, petitioner submitted the following documents: income recertifications for the Manhattan Plaza apartment and related leasing documents, as well as the owner's Certificates of Compliance, from September 2018 through November 2019; forms designating petitioner as Ray's health care proxy and POA dated August 2018; bank statements from Ray's checking account from December 2018 through March 2020 naming petitioner as POA and reflecting numerous transactions in New York City, addressed to Ray and petitioner as POA at the Manhattan Plaza apartment; correspondence addressed to petitioner at the Manhattan Plaza apartment, including letters pertaining to Medicaid, SNAP, and HEAP benefits, from prior to March 2019; letters addressed to petitioner at the Manhattan Plaza apartment regarding his SNAP benefits from April and May 2019; letters from the Social Security Administration regarding petitioner's social security benefits from February 2019 and July 2020; bank statements from petitioner's Wells Fargo checking account from October 2018 through January 2019; a document indicating that petitioner applied for a personal signature card at a bank in New York on March 10, 2020, using a Florida driver's license issued in 2013 and valid until 2021 as his primary identification; petitioner's New York State driver's license, issued in July 2020; and Ray's death certificate, dated March 21, 2020 and issued on March 23, 2020, which identified petitioner as the informant and listed the Mitchell-Lama apartment as his address. Some of petitioners' documents were addressed to him at a Florida address—specifically, the August 2018 health care proxy and POA forms, the February 2019 letter from the Social Security Administration, and the bank statements from petitioner's Wells Fargo checking account. Petitioner did not submit any tax returns,[FN5] credit card statements, utility bills, or voter registration documents in support of his succession application.
Petitioner's submissions demonstrate that he relocated from Florida to New York City in 2018 to care for his ailing brother during the last year and a half of his life. The health care proxy and POA forms that Ray executed in August 2018 authorized petitioner to make medical and financial decisions on his [*8]brother's behalf. Indeed, HPD expressly determined that petitioner cared for Ray in the Mitchell-Lama apartment before his death. In addition, Manhattan Plaza recognized that petitioner was a member of Ray's household and a resident of the Mitchell-Lama apartment from September 2018 until the time of Ray's death, as reflected in the income recertification forms and related Manhattan Plaza leasing documents. In fact, Manhattan Plaza increased the apartment's monthly rent and sought federal subsidies from the U.S. Department of Housing and Urban Development based on Ray's and petitioner's combined income, which it treated as the household's total income. For Manhattan Plaza to collect rent money from a low-income resident like petitioner for more than a year, only to turn him out after his brother's death, runs directly contrary to the Mitchell-Lama statutory scheme and its remedial purpose of preventing displacement after a family member's death (see Murphy, 21 NY3d at 653).
Furthermore, documents from New York State government agencies related to petitioner's public benefits—Medicaid, SNAP, and HEAP—were all addressed to him at the Manhattan Plaza apartment. Those benefits were provided to him, in accordance with legal requirements, based on proof that he was a low-income resident of New York.
Based on the documents before HPD, the only reasonable conclusion was that petitioner resided with his brother during the co-residency period. As HPD should have been aware, Medicaid, SNAP, and HEAP benefits for low-income New Yorkers are dispensed locally and cannot be obtained without providing proof of New York residence (see 42 CFR 435.403 [a] [Medicaid]; 18 NYCRR 360-3.2 [k] [same]; 7 USC § 2020 [o] [SNAP]; 7 CFR 273.3 [same]; 18 NYCRR 387.9 [a] [same]; 18 NYCRR 393.3 [a] [3]-[b], 393.4 [a]-[c] [HEAP]). Moreover, any misrepresentations on petitioner's benefits applications would have subjected him to criminal penalties (see 18 USC § 1347 [healthcare fraud]; 7 CFR 273.3, 273.16 [b] [5] [same]; Penal Law §§ 158.00 [b]-[c]; 158.15 [welfare fraud]). Given these residency requirements, the public benefits correspondence from State and City agencies addressed to petitioner at the Manhattan Plaza apartment was substantial proof that the apartment was his primary residence during the co-residency period. As there was no evidence or finding of fraud by HPD, there is simply no rational explanation for petitioner receiving these public benefits other than that he was residing in his brother's New York City apartment while they were provided to him.
HPD instead fixated on documents that petitioner did not submit, ignoring his limited means and his demanding caretaking responsibilities for his ill, elderly brother during the final year and a half of his life. As Supreme Court and the dissenting Appellate Division Justices recognized, the fact that petitioner did not submit certain documentation to establish primary residency does not diminish the evidentiary quality of the documents that he did in fact provide. Indeed, the documents that petitioner did not submit were merely recommended as proofs of primary residency, but not required.
Accordingly, the agency irrationally disregarded the April and May 2019 letters regarding petitioner's SNAP benefits addressed to him at the Manhattan Plaza apartment as well as his brother's death certificate dated March 21, 2020, identifying petitioner as the informant, and the HO further irrationally rejected the proof of petitioner's POA over Ray's bank account as not supporting credible or reliable proof of his co-residency. It is without question that not all New York residents are registered to vote or hold a valid New York State driver's license. Petitioner had no immediate need for these documents, but he did have an urgent need for benefits, which he applied for and received in New York during the co-residency period.
HPD cannot ignore a succession applicant's particular circumstances, including subsisting as a low-income person in New York City and how that impacts the applicant's documentary evidence of residence. The failure of HPD to account for the reality of petitioner's situation results in a decision that is "without sound basis in reason or regard to the facts" (see Murphy, 21 NY3d at 652).
Given petitioner's demanding caretaking responsibilities, and that he is a senior citizen of limited means, dependent on meager social security and other governmental benefits to survive, it was simply irrational for HPD to conclude that the Mitchell-Lama apartment was not his primary residence during the [*9]last year of his brother's life, when petitioner was most needed to assist his brother. The only other addresses associated with petitioner are in Florida, as that is where he lived before relocating to New York City to care for his ailing brother. Does the agency, and the majority for that matter, seriously believe that petitioner was commuting between Florida and New York City for the final year of his brother's life or longer, or residing elsewhere in New York, all on a senior citizen's social security check? Reaching such conclusion is irrational, and yet HPD denied petitioner succession rights all the same.
HPD's determination that petitioner failed to establish the one-year residency to obtain succession rights to the Manhattan Plaza apartment where he cared for his brother during the final year and a half of his life, all because he was missing a few recommended pieces of paper, and notwithstanding the numerous other documents establishing his residency, was simply irrational. I dissent.
Order affirmed, with costs. Opinion by Judge Cannataro. Chief Judge Wilson and Judges Garcia, Singas and Halligan concur. Judge Rivera dissents in an opinion, in which Judge Troutman concurs.
Decided December 18, 2025

Footnotes

Footnote 1: As noted by the administrative hearing officer, petitioner's initial application for succession rights indicated that he moved to the subject apartment in November 2018, while his administrative appeal used an August 2018 date.
Footnote 2: Petitioner obtained a New York driver's license in July 2020.

Footnote 3: Addressing the conclusion reached by the dissent on its review of the record, the hearing officer could have reached the opposite determination, but it is not our role to reweigh the evidence and substitute our judgment for that of the agency (see Matter of Jennings v New York State Off. of Mental Health, 90 NY2d 227, 239 [1997]).
Footnote 1: Petitioner and other public sources refer to Raymond Mantilla as Ray Mantilla, and for ease of reference, I do the same.

Footnote 2: Lymphoma is a cancer that affects the lymphatic system, which is the network of tissues, vessels, and organs that help the body fight infection (Cleveland Clinic, Lymphoma, available at https://my.clevelandclinic.org/health/diseases/22225-lymphoma [last accessed Dec. 4, 2025]).

Footnote 3: Petitioner asserts that Manhattan Plaza relied on his residence in the apartment to collect over $3,000 per month in federal subsidies from the United States Department of Housing and Urban Development (see 24 CFR 960.257; U.S. Department of Housing and Urban Development Handbook 4350.3 REV-1 ch 5 § 4 at 65-68 [Nov. 2013], available at https://www.hud.gov/sites/documents/43503hsgh.pdf [last accessed Dec. 4, 2025]).
Footnote 4: Those leasing documents included lease amendments, price lists, satellite dish and antenna addenda, mold and mildew disclaimers, sprinkler disclosures, and bedbug history notices. 

Footnote 5: I agree, for the reasons stated by the majority, that petitioner's failure to provide New York State tax returns, or to explain why he was not legally obligated to file taxes, cannot be considered on this appeal (see majority op at 8).